# DRENNEN & Others *v.* LONDON ASSURANCE COMPANY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

Submitted December 2, 1884.—Decided January 5, 1885.

An agreement by the members of a firm to admit a person into their business, on condition that the company shall become incorporated, and that he shall pay into the firm for its use, a stated sum of money which is to be put into the corporation, it being understood that no change shall be made in the name or character of the firm until the corporation shall be formed; and the subsequent payment of the agreed sum, do not make such person a member of the firm, or give him an interest in the partnership property in advance of the creation of the corporation.

This action was brought on two policies of fire insurance, issued March 10, 1883, by the London Assurance Corporation of London on certain goods, wares and merchandise, which, it was admitted, were, at the time of insurance, the property of the firm of Drennen, Starr & Everett, doing business in the city of Minneapolis, Minnesota. The loss occurred on the 29th of July, 1883, and there was no dispute, at the trial, as to its amount.

Each policy contained a provision that it should be void if the property insured "be sold or transferred, or any change takes place in title or possession (except by succession by reason of the death of the insured), whether by legal process, or judicial decree, or voluntary transfer or conveyance." Also, that "if the interest of the assured in the property be any other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, . . . it must be so represented to the corporation, and so expressed in the written part of this policy, otherwise the policy shall be void. When property has been sold and delivered, or otherwise disposed of, so that all interest or liability on the part of the assured herein named has ceased, this insurance on said property shall immediately terminate."

The defendant disputed its liability on the ground that Drennen, Starr & Everett, on the 24th of May, 1883, before the loss, admitted one Arndt as a partner in their firm, and that thereby, without its knowledge or consent, and by the voluntary act of the plaintiffs, the title, interest and possession of the insured in the property were changed, and the policies became void. The plaintiffs denied that Arndt ever became a member of their firm, or acquired any interest in the property insured. Upon this issue the proof was, substantially, as will be now stated.

Arndt resided in Sandusky, Ohio. He visited Minneapolis in May, 1883, and first became acquainted with plaintiffs, Drennen and Starr, on or about the 20th day of that month. Negotiations then commenced with Drennen and Starr, who acted for their firm, and resulted in the making of the following agreement:

" This agreement, made and entered into this 24th day of May, A.D. 1883, by and between E. J. A. Drennen, F. W. Starr, and Edward D. Everett, who are now members of and constitute the firm of Drennen, Starr & Everett, all of the city of Minneapolis, Minnesota, parties of the first part, and D. M. Arndt, of the city of Sandusky, Ohio, party of the second part, vitnesseth: Said parties of the first part hereby agree to receive into their business said Arndt on the following terms and conditions:

" 1st. Said company is to become incorporated.

" 2d. Said Arndt is to pay into said firm for its use, on or before June 14th, 1883, five thousand dollars.

" 3rd. Said Arndt is to pay into said firm for its use, on or before January 1st, 1885, an additional sum of five thousand dollars.

" 4th. Said Arndt is to pay said firm interest at the rate of 8 per cent. per annum on each of said sums of five thousand dollars from January 1st, 1883, till each of said sums shall be paid as aforesaid, the interest on last-mentioned sum to be paid semi-annually.

" 5th. If said Arndt shall be unable to pay said second $5,000 by January 1st, 1885, his interest shall be decreased 50

per cent. and until said last-mentioned sum of $5,000 shall be paid, or interest decreased as aforesaid, the liability of said Arndt therefor shall be evidenced by his promissory note executed to said firm bearing interest as aforesaid, and dated January 1st, 1883. The business to be carried on by the new company to be formed as aforesaid shall be of the same nature as that now conducted by Drennen, Starr & Everett; the name of the new company to be formed shall be determined hereafter.

"It is understood and agreed that of the effects and rights of the firm of Drennen, Starr & Everett, said Drennen owns one-half and said Starr and Everett each one-fourth thereof. All said rights and effects shall be put into the corporation to be formed as aforesaid, at their value as shown by the inventory taken January 1st, 1883, less any loss by reason of non-payment of any claim for goods sold by them before that time, and that to the amount to be contributed as aforesaid shall be added said sum of ten thousand dollars to be paid by said Arndt as aforesaid.

"The interest and shares of the several parties to this agreement in the new company shall be in proportion to the amount contributed by each to its capital stock according to the plan aforesaid.

"When a charter shall be procured as aforesaid 50 per cent. of the stock of said Arndt shall be held by said company, or some one in trust for it, till said second sum of $5,000, with accruing interest thereon, shall be paid. It is understood said Arndt is to attend to the book-keeping and office work of said business, and that each remaining partner of the firm of Drennen, Starr & Everett shall actively engage in the business of the new company; that no change in the name or character of the firm of Drennen, Starr & Everett shall be made until said corporation shall be formed.

"In testimony whereof, said parties hereto set their signatures, the day and year first herein written.

"E. J. A. DRENNEN.
"FRED. W. STARR.
"DAVID M. ARNDT."

, Everett, one of the plaintiffs, was then absent from Minneapolis, but upon his return soon after, was informed by his partners of the contents of the written agreement with Arndt. The latter, immediately after the agreement was signed, went to Sandusky, but returned to Minneapolis about the 17th of June, 1883. This was after Everett learned from his partners what had occurred between them and Arndt. On the 18th of June, 1883, plaintiffs received from Arndt the sum of $5,000, which was placed to his individual credit upon the account books of the firm, and was by plaintiffs deposited in their bank; and on July 3, 1883, he made and delivered to them his promissory note for $5,000, which was also entered upon their account books to his individual credit. It was accepted by them as other bills receivable in their business.

This constituted the whole evidence upon which the case went to the jury. There was a verdict and judgment for the defendant. The plaintiffs sued out this writ of error.

*Mr. L. J. C. Drennen* and *Mr. George B. Young* for plaintiffs in error.

*Mr. C. K. Davis* for defendant in error.—The contract constituted Arndt a partner upon the payment of $5,000 and giving his note for $5,000. The language when analyzed shows this. If not a partner, he became a creditor, and nothing can be clearer than that the parties did not intend such a result. The case of *Syers* v. *Syers*, 1 L. R. App. Cas. 174, is precisely in point. Suppose from some reason—as death of one of the parties—the corporation had never been formed. Could Arndt have sued for his money? Obviously not. His remedy would have been a bill in equity for winding up the partnership. If the plaintiffs' contention is correct, Arndt paid in $10,000 on a mere executory promise to form a corporation, which could not be enforced. *Stocker* v. *Wedderburn*, 3 K. & J. 393; *Maxwell* v. *Port Tenant Co.*, 24 Beav. 495; *Sheffield Gas Co.* v. *Harrison*, 17 Beav. 294; *Bluck* v. *Mallalue*, 27 Beav. 398. The conduct of the parties, too, taken in connection with the agreement, is reconcilable with no theory other

than that Arndt purchased a present interest. If it be doubtful, on the face of an instrument, whether a present demise or future letting was meant, the intention of the parties may be gathered from their conduct. *Chapman* v. *Bluck*, 4 Bing. N. C. 187, 195. See also *Doe* v. *Ries*, 8 Bing. 181; *Drummond* v. *Attorney-General*, 2 H. L. Cas. 861; *Nash* v. *Towne*, 5 Wall. 689; *Railroad* v. *Trimble*, 10 Wall. 367. If these conclusions are correct, it follows that a change had taken place in the title and possession of the property, and that the interest of the assured became other than the entire, unconditional and sole ownership of the same, and the policies were therefore avoided under each of the conditions contained in them. Any process by which a new party is introduced, by which the insured shifts the moral hazard from himself to a stranger, creates a new contract and a new relation, which the company has not consented to assume. *Malley* v. *Insurance Co.* (Supreme Ct. Connecticut, June T. 1883), 13 Insurance Law Journal, 38. This is not the case of one partner retiring, leaving the insured property with the firm, which is held in some States not to affect the policy. *Lockwood* v. *Insurance Co.*, 47 Conn. 564; *Hoffman* v. *Insurance Co.*, 32 N. Y. 405. It is the introduction of a stranger as custodian of the property, which cannot be done. *Malley* v. *Insurance Co.*, cited above. *West* v. *Insurance Co.*, 22 Ohio St. 11; *Dix* v. *Insurance Co.*, 22 Ill. 272; *Barnes* v. *Insurance Co.*, 51 Maine, 110; *Insurance Co.* v. *Rice*, 23 Ind. 179; *Finley* v. *Insurance Co.*, 30 Penn. St. 311; *Insurance Co.* v. *Richer*, 10 Mich. 279. See also *Day* v. *Insurance Co.*, 23 Barb. 623; *Wood* v. *Insurance Co.*, 31 Vt. 552; *Keeler* v. *Insurance Co.*, 16 Wisc. 523; *Insurance Co.* v. *Hauslein*, 60 Ill. 521; *Card* v. *Insurance Co.*, 4 Missouri App. 424; *Oakes* v. *Insurance Co.*, 118 Mass. 164.

MR. JUSTICE HARLAN delivered the opinion of the court. He recited the facts as above stated, and continued:

At the trial below the plaintiffs asked the court to instruct the jury that the written agreement with Arndt, followed by his payment of $5,000 in money, the delivery of his note for a like amount, and the entry of the money and notes to his

individual credit upon the books of Drennen, Starr & Everett, did not constitute him a partner with plaintiffs, as between themselves, and did not have the effect to assign or transfer to him any title or interest in the property insured. The court refused to give that instruction, but charged the jury that "said agreement so signed, if assented to by Everett, and the receipt by plaintiffs of the money and note and the credit thereof on their books to Arndt, would and did constitute Arndt a partner with plaintiffs, as between themselves, from the time of the receipt by plaintiffs of said money, and had the effect to convey and transfer to and vest in Arndt a joint and undivided interest and title with plaintiffs in the insured property."

The instruction refused, as well as the one given by the court, assumes that the admission of Arndt at any time before the loss as a partner in the firm to which the policies were issued, would have involved such a transfer of the property or such a change in its title or possession as would render the policies void. Without considering whether that assumption is justified by a proper interpretation of the policies, we have now only to determine whether there was error in holding that Arndt, by virtue of the agreement of May 24, 1883, and the facts recited in the charge to the jury, became a partner in the firm of Drennen, Starr & Everett. This question is within a very narrow compass; for our inquiry is restricted to the ascertainment of the real intention of the parties as disclosed by the written agreement, considered as a whole, and by their conduct in execution of its provisions.

It appears, in the forefront of the agreement, that Arndt did not acquire an interest in the firm property immediately upon its execution; for, the plaintiffs only agreed to receive him into their business on certain terms and conditions thereafter to be performed. The first of those conditions was, that the company—the one to be formed by the proposed connection between the plaintiffs and Arndt—should become incorporated; then, he was to pay into the firm for its use, on or before June 14, 1883, the sum of $5,000, and a like sum on the 1st of January, 1885, the latter to be evidenced by his note, each sum to bear interest from January 1, 1883, until paid; finally,

his interest was to be decreased fifty per cent. if he failed to pay the second $5,000 by January 1, 1885; "the business"— that in which Arndt was to have an interest—"to be carried on by the new company to be formed as aforesaid shall be of the same nature as that now conducted by Drennen, Starr & Everett." Then follows a declaration as to the property upon the basis of which the new company was to be organized, viz. : all the rights and effects, owned by Drennen, Starr & Everett, in the proportion of their respective interests to be put into the corporation to be formed, according to their value as shown by the inventory of January 1, 1883, less any loss, by reason of non-payment for goods sold before that date, to which was to be added the $10,000 which Arndt agreed to pay—the interest of the several parties in the new company to be according to the amounts contributed by them, respectively, to its capital stock.

These provisions all plainly point to an interest that Arndt was to acquire, not presently, nor immediately upon the agreement being signed, but at some future period, when the conditions distinctly set out in the agreement, not some, but all of them, were performed. When those conditions were satisfied, and not before, he would have been entitled to demand, as of right, the execution of the stipulation that he be received into the business then represented by Drennen, Starr & Everett, but thereafter to be represented by the new or incorporated company. The parties appear, *ex industria*, to have excluded the possibility of his acquiring an interest in or control over the insured property in advance of the formation of an incorporated company. Upon no other ground can the clause, "that no change in the name or *character* of the firm of Drennen, Starr & Everett shall be made until said corporation shall be formed," be satisfactorily accounted for. It may be that Drennen, Starr & Everett were unwilling to establish the confidential relations of partner with Arndt, but were willing to unite their property with his money, to be owned by a corporation in which all would become stockholders, according to the amounts respectively contributed to its capital stock. Hence, perhaps, the wording of the clause last quoted. If, as

the jury were in effect instructed, Arndt became a partner in the firm of Drennen, Starr & Everett prior to the loss, then the character of that firm was essentially changed; for, as partner, he would have become, at and before the proposed corporation was formed, at least as to third parties, a general agent of his copartners, in respect of all matters within the scope and objects of the partnership, with authority, implied from the relation itself, to participate in the control and management of the property, and, in the name of the firm, even to dispose of the entire right of all the partners for partnership purposes. The agreement is not, in our judgment, fairly susceptible of a construction which is attended by such results. The requirement that Arndt was to be received into the business upon the condition, among others, that the company should be incorporated, and the further requirement that neither the name nor the character of the firm was to be changed until the proposed corporation was formed, cannot be satisfied by any other interpretation than one which excludes him from all control or management of, or legal interest in, the property insured, prior to the formation of such corporation.

It is suggested that Arndt would not have paid $10,000 in cash and notes "into the firm for its use" unless he supposed that he would thereby acquire a present interest in the firm's property. The answer is, that the want of business sagacity in such an arrangement, if such there was, cannot control the interpretation of the written agreement between the parties. Arndt, in effect, agreed to pay Drennen, Starr & Everett $5,000 on June 14, 1883, and a like sum on January 1, 1885, with interest on each sum from January 1, 1883, until paid, for the privilege of becoming, to the extent of such payments, a stockholder in a corporation thereafter to be formed, whose capital stock should represent all the effects and rights of that firm, as of the date from which Arndt was to pay interest (less any loss arising from the non-payment of goods previously sold), increased by the $10,000 which Arndt agreed to pay into the old firm. Such was the whole extent of the agreement.

The instruction by the court below proceeded upon the ground that the payment by Arndt in cash and notes of the amount which he agreed to pay, and their receipt and entry upon the books of the firm to his credit, gave him an interest as partner in the business; whereas such facts only established the performance of some, not of all, the conditions prescribed; for, by the agreement, the formation of the proposed corporation was expressly made a condition, with the others named, to Arndt's becoming interested in the business.

In our judgment, looking at the whole agreement, the parties did not contemplate a partnership, and none was ever established between them. The agreement looked only to a corporation, the payments and other things specified being in preparation for its ultimate formation, which was an adequate, as it was the actual, consideration; consequently, there was, prior to the loss, and under the most liberal interpretation of the policies, no change in the title or possession of the property, nor any transfer thereof, that avoided the policies.

This is sufficient to dispose of the case. For the reasons given

*The judgment must be reversed and a new trial had.*