Archibald V. Simonson v. Commissioner.
Simonson v. Commissioner
Docket No. 8148.
United States Tax Court
1946 Tax Ct. Memo LEXIS 105; 5 T.C.M. (CCH) 718; T.C.M. (RIA) 46197; August 14, 1946
*105 Charles J. Costabell, Esq., 61 Broadway, New York, 6, N. Y., for the petitioner. Walt Mandry, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The respondent determined a deficiency in the income tax of petitioner for the calendar year 1941 in the amount of $44,375.23. The issues are: 1. Is the petitioner taxable upon his wife's distributive share of the net income of an alleged partnership? 2. Is the petitioner entitled to a deduction for the cost of certain films used in the business? A third issue relating to the failure of the respondent to allow petitioner a personal exemption has been conceded by petitioner inasmuch as his wife claimed a personal exemption of $1,500 in a separate return filed by her. Findings of Fact The petitioner, an individual residing in New York City, and having an office at 149 Broadway, filed his income tax return for that year with the collector of internal revenue for the second district of New York. The petitioner and Ethel C. Simonson were married in 1932 and filed separate income tax returns for the year 1941, as well as for several years prior thereto. In the year 1929, the *106 petitioner engaged in business for himself in New York, as a manufacturers' agent on a commission basis, representing oil fileld manufacturers located in Oklahoma and Texas, and selling equipment such as pumping units, drilling units and tool joints to companies producing crude oil which used such equipment in foreign countries. Prior to 1929 the petitioner had long experience in this field, having worked for oil supply houses and in various capacities in the oil fields. The petitioner's business was highly competitive and while the purchasing agents of the companies that purchased the equipment were located in New York, it was necessary for him to make personal contact with the field men as well as the purchasing agents. There were several hundred of these field men in South America, and they came to the United States several times a year and brought their families every one or two years. It was also necessary for petitioner to travel considerably. The selling of this type of equipment required a particular knowledge of the oil industry and it was necessary to convince the buyer that it would be to the latter's interest to buy the equipment sold by the petitioner. There were approximately *107 sixty manufacturers of various types of pumps and drilling equipment, most of which had sales organizations located in New York City. During the period from 1929 to 1940, inclusive, the petitioner represented about six manufacturers. He did all of the selling, calling on the trade and procured all of the orders. These orders were taken out in the name of the manufacturers to whom the order was transmitted for filling. The petitioner maintained an office at 149 Broadway, New York, N. Y., and had an office force of five or six girls who performed the routine office work in connection with his business. One of the girls, who took care of his books and acted as head of the office received a salary of $3,600 per annum. The business was conducted in the name of A. V. Simonson. The petitioner commenced business on a modest scale, but for the years 1939, 1940 and 1941 the business had a net income of about $18,000, $82,000 and $132,000 respectively. The increased business was due to the war and larger contracts. The petitioner's wife had been employed for a long time by the New York Telephone Company, as an assistant to the Chief Employment Supervisor, where she had charge of eight girls. *108 Her salary during the year 1940 was about $50 a week. She retired in June, 1940, on a pension of $650 a year. During the earlier years of the business she had advanced small sums to help out her husband, but these amounts had been repaid many years ago. She knew the various manufacturers and also the customers. During the years prior to 1941 she spent some time in the office during lunch hours and after her own office hours, particularly when the petitioner was absent on a trip. She also accompanied the petitioner on some of his trips during her vacation. She assisted the petitioner in entertaining the customers and doing favors for them in various ways. Since the petitioner and his wife were married they maintained a joint bank account, in which they deposited their earnings and from which they paid their living expenses. On December 31, 1940, the petitioner and his wife executed a partnership agreement, to be effective January 3, 1941, and to continue until December 31, 1945, to engage in the business as manufacturers' agents. The agreement provided that the business should be conducted under the name of A. V. Simonson, with office at 149 Broadway; that each should contribute *109 $20,000 to the capital; that each should devote all of his business time and attention to the business; and that the net profit should be divided equally. It also provided that in the event petitioner was alive at the termination of the partnership, good-will and the right to use the partnership name should belong to him, and no value should be ascribed to good-will in determining the value of the partnership's assets. On the date the partnership agreement was signed, December 31, 1940, the petitioner drew a check, payable to his wife, in the amount of $20,000 on the joint bank account, the deposits in which consisted in the main of deposits by the petitioner from his business. She endorsed this check and deposited it in the partnership account as her capital contribution. The petitioner also drew a check or checks in the sum of $20,000 and deposited it in the partnership account as his capital contribution. The business required very little capital. The petitioner was selling on a commission basis and received commission checks with regularity throughout the year 1941 in the aggregate amount of approximately $156,000, or $13,000 a month. The expenses of the business during the year *110 1940 amounted to about $24,000, or about $2,000 a month for salaries, rent, office expenses, traveling and entertaining. The balance sheet of the partnership as of January 3, 1941 and December 31, 1941 shows the following. Assets
1-3-41
12-31-41
Cash
$40,000.00
$43,874.39
Petty cash
41.10
139.91
Furniture and fixtures
1,638.80
1,986.86
$41,679.90
$46,001.16
Liabilities
Accounts payable
$ 1,014.78
$ 1,014.78
Reserve depreciation
665.12
835.28
E. C. Simonson - Cap.
Acct.
20,000.00
35,022.50
A. V. Simonson - Cap.
Acct.
20,000.00
9,128.60
$41,679.90
$46,001.16
The petitioner testified that he had written the check for $20,000 in favor of his wife because his advisers on how to go into a partnership had advised him to make a gift to his wife. Petitioner's counsel conceded at the hearing that the wife made no contribution of capital. During the year 1941 the petitioner conducted his business precisely in the same manner as he had conducted it in prior years. He maintained an office at the same place and conducted his business in the same name, A. V. Simonson. He continued to represent the same manufacturers he had represented prior *111 to 1941 and sold the same type of equipment to the same customers. He procured the orders and had about the same office force to take care of the same routine business. The manufacturers were informally advised of the partnership. Petitioner's wife had no technical knowledge of the equipment which the petitioner sold and she could not have sold such equipment. She never procured an order and would not say that she actually was the means of getting an order. Since she was no longer employed by the Telephone Company in 1941, she spent more time at the office and in entertaining. However, she kept no regular office hours, and it does not appear that she had any special duties, other than writing out checks for salary, rent, social security, and other bills, and taking care of matters that might come up from time to time. She entertained customers, as she had prior to 1941, but had more time to devote to such entertainment, as this was considered to be the important part of her job. She made one trip with the petitioner during 1941, which covered a period of about two and one-half months. They visited Canada for about two weeks and while there went out to some oil fields. They also visited *112 an oil convention in California and visited some manufacturers in Texas. The partnership reported a net income of $132,045 for the year 1941, the share of each partner being reported as $66,022.50. The petitioner withdrew all of his share and in addition thereto withdrew about $11,000 of his capital. His wife withdrew $51,000 of her share and left the balance in the business. Of the $51,000 which she withdrew $35,000 thereof was paid by check to the petitioner, who used the money to pay his income tax due on his separate return. The balance of $16,000 was withdrawn by her at monthly intervals during the year and was deposited in the joint bank account. On December 29, 1941 the petitioner purchased certain films at a cost of $420. These films showed the process of everything that the drilling equipment could do and had been made in about 1938. He showed the films to his customers in New York for a period of about six months. During the year 1945 he gave the films to the Russian Government which Government had bought equipment from him during the war and was buying equipment from him during 1945. The films were all right from an instructive and educational point of view when he made *113 the gift in 1945. The petitioner considered that the purchase was an investment in sales promotion. The films had a useful life of more than one year. The petitioner and his wife filed separate income tax returns for the year 1941, and the wife in her return claimed the full amount of the personal exemption, i.e. $1,500, and the petitioner claimed none. Opinion The first issue is whether the petitioner and his wife were equal partners in the conduct and operation of a business during 1941, and hence entitled to divide its net profits for that year equally between them for income tax purposes. The respondent determined that the entire net income of the alleged partnership was taxable to petitioner. The Supreme Court, in Commissioner v. Tower, 327 U.S. 280, (February 25, 1946), stated the rule to be as follows: * * * When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits and losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed *114 by their "agreement, considered as a whole, and by their conduct in the execution of its provisions." Drennen v. London Assurance Company, 113 U.S. 51, 56; Cox v. Hickman, 8 H. L. Cas. 268. We see no reason why this general rule should not apply in tax cases where the government challenges the existence of a partnership for tax purposes. * * * The Supreme Court also said: * * * The question here is not simply who actually owned a share of the capital attributed to the wife on the partnership books. A person may be taxed on profits earned from property, where he neither owns nor controls it. Lucas v. Earl, supra. The issue is who earned the income and that issue depends on whether this husband and wife really intended to carry on business as a partnership. Those issues cannot be decided simply by looking at a single step in a complicated transaction. To decide who worked for, otherwise created or controlled the income, all steps in the process of earning the profits must be taken into consideration. See Commissioner v. Court Holding Co., 324 U.S. 331, 334. Of course, the question of legal ownership of the capital purportedly contributed by *115 a wife will frequently throw light on the broader question of whether an alleged partnership is real or pretended. But here the Tax Court's findings were supported by a sufficient number of other factors in the transaction, so that we need not decide whether its holding as to the completeness of the gift was correct. Cf. Helvering v. Hallock, 309 U.S. 106, 117, 118; Burnet v. Wells, 289 U.S. 670, 677. II. There can be no question that a wife and a husband may, under certain circumstances become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. Sections 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her *116 a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws. Petitioner concedes that his wife made no contribution to the capital of the business. He urges that she rendered services which contributed - or which were reasonably calculated to contribute - to the business welfare. For many years before the partnership petitioner had been engaged in business as a manufacturers' agent. He testified that the business of selling drilling machinery and pumps for oil wells required a particular knowledge of the oil industry and that experience he had in the oil field supply business and as a "roughneck" in the Texas oil fields prior to 1929 gave him a familiarity with the business and its needs which not only helped him but was necessary in the business of selling oil drilling equipment. He also testified that prior to 1941, his wife helped him to entertain customers and during her vacation would make trips with him. After the partnership was formed the wife continued her entertainment activities, and made out and signed some checks. During 1941, she took a *117 two and one-half month trip with petitioner and visited Canada, California and Texas. Even if it be assumed that some time on this trip was devoted to business, we are not satisfied that her participation therein exceeded that which a wife usually takes when she goes with her husband to a convention and to visit people with whom he does business. Although an attempt was made to prove that she performed supervisory and other services vital to the business, the evidence falls far short of proving any such services. She was not familiar with the equipment petitioner was selling; never procured an order for equipment; kept no regular office hours, and had no specified duties at the office during 1941. From the testimony of petitioner it is clear that he considered her main function was the entertainment of customers. The petitioner conducted his business during 1941 in the same manner as he had conducted it in prior years, in the same place and under the same name. The commission checks continued to be made payable to A. V. Simonson and he continued to make all sales personally. The only change which took place was that the wife spent more time in the office and in entertaining customers *118 during 1941 than she had theretofore. That she took a wifely interest in her husband's business is not doubted, but the services she rendered could not without gross exaggeration be classified as a substantial contribution "to the control and management of the business", or "vital additional services". The business was essentially that of petitioner and the earnings were mainly due to his personal services. The conclusion is inescapable that the petitioner and his wife did not in a real sense carry on a business as partners in 1941. It follows that the respondent did not err in including in petitioner's income for that year the entire net income of the alleged partnership. The remaining issue relates to the deductibility of $420 which petitioner expended in the purchase of films. The evidence discloses that petitioner purchased the films at a cost of $420 on December 29, 1941., that they showed the process of everything that the drilling equipment could do; that he showed the films to customers in New York for a period of about six months; and that he retained ownership of them until 1945, when he gave them to the Russian Government, which had purchased equipment from him during *119 the war and was still buying equipment from him in 1945. Petitioner testified that the films were all right from an instructive and educational point of view when he made the gift and that he considered that the purchase was an investment in sales promotion. Petitioner contends that the $420 is deductible in 1941 as an ordinary and necessary business expense. The respondent urges that the cost of the films should be classified as a capital expenditure, since they have a useful life extending substantially beyond the taxable year. We agree with the respondent. Petitioner purchased an asset, the cost of which should be recovered by depreciation deductions over the estimated life of the property. The evidence does not disclose the estimated life of the films, or their value at the time the petitioner gave them to the Russian Government. Apparently they had a life in excess of the period that the petitioner owned them, for he testified that they had a value when he gave them away in 1945. He also testified that he acquired the films a few months before he paid for them. He would therefore be entitled to a small deduction for depreciation if he had shown their useful life and value at *120 the time he parted with them. His failure to give us this vital information leaves us with no alternative but to approve the respondent's disallowance as a deduction of the entire cost of the films. Judgment will be entered for the respondent.