**WALSH v. SHAUGHNESSY, Collector of Internal Revenue.**

Civil Action No. 2948.

District Court, N. D. New York.

April 3, 1948.

578

Crapser & Crapser, of Massena, N. Y. (William S. Crapser, of Massena, N. Y. of counsel), for plaintiff.

Irving J. Higbee, U. S. Atty., of Syracuse, N. Y. (Frederic G. Rita, Sp. Asst. to Atty. Gen., of counsel), for defendant.

BRENNAN, District Judge.

This is an income tax litigation, the crux of which is the determination as to the existence of a partnership between husband and wife.

The plaintiff seeks in this action to recover a money judgment which represents, as he claims, an overpayment of income tax to the defendant in his official capacity as Collector of Internal Revenue for the 21st Collection District of New York.

The necessary procedural steps have been taken, and the basis of plaintiff's cause of action is that he filed income tax returns for the years 1941–1943 inclusive, in which he reported the total annual profit of the Walsh Trucking Service as his personal income. Both plaintiff and his wife thereafter filed amended tax returns for the above years in which the proceeds of the business were divided equally between them. Mrs. Walsh paid an income tax on the basis of the amended returns. This resulted in a claim for a refund by reason of an overpayment by plaintiff, which refund was refused, and this action was instituted.

There appears to be no serious dispute either as to the facts or the law. It is the application of the law which causes this litigation. The facts are set forth in some detail, as it seems clear that the determination of whether or not a partnership existed depends upon the application of well recognized rules of law.

The plaintiff, Michael F. Walsh, and his wife, Mabel Easton Walsh, have resided for years at Massena, New York. Prior to October, 1925, the plaintiff was employed in the delivery or express business. He was engaged to be married to Mabel Easton, and they were in fact married on June 12, 1926. About October, 1925, plaintiff and his intended wife discussed the advisability of purchasing the business conducted by Walsh's employer. Such purchase was made for the sum of $1500. About two-thirds of the purchase price had been paid at the time of the marriage of the parties. Mrs. Walsh had been employed as a telephone operator prior to her marriage. She kept a book record of the business transactions of the Walsh Trucking Service. These records lack the clarity of a set of business books, but no doubt is cast upon the accuracy of the entries therein, or the sincerity of the intention of the parties to keep an accurate record of the business venture. It is at least fair to say that upon her marriage Mrs. Walsh assumed control of the records of the company, maintained the books of account, and contributed her efforts to the success of the business. She continued to be employed by the telephone company, and later by the Massena Ice Company until about 1930, and since that date has devoted her full time to the conduct of the trucking business. The housework was done by hired household help. Up to 1930 the uncontradicted testimony is that Mrs. Walsh contributed her salary to the business. The book record confirms her statement, although the Court is unable to find entries which reach the total of $3796, as testified to upon the trial. It is fair, however, to say that in 1927 the books show entry "Amt. Sal. Mabel Walsh" $450 and $255. In 1928 similar monthly entries in the amount of $1125 appear. In 1929 similar monthly entries were made for the months of January, February, March and April, and thereafter weekly entries of $18 per week appear upon the books of the company for the balance of the year 1929 and up to June, 1930, in the total amount of $1399 for 1929 and 1930. During the period above referred to and continuing to date the household expenses were paid from the earnings of the company. The personal expenses of Mr. and Mrs. Walsh

were also paid therefrom. All bank accounts were carried in the names of Michael Walsh and Mabel Walsh, and were subject to withdrawal upon the check of either one. The books contain occasional entries showing the addition of sums of money to the business, same having been withdrawn from an interest account. Real property purchased with the profits of the expanding business were taken in the names of both parties, and both parties contributed their energy, intelligence and business ability to the success of the enterprise. It is not necessary to detail the duties of Mrs. Walsh other than as above stated. In her own words, "I have done everything, including driving a truck." It can be stated, however, that she took charge of the office of the company, supervised the labor of office employees, and that Michael Walsh performed and supervised the labor of outside employees engaged in the physical operation of the business. Matters of policy and of unusual importance were discussed and decided by their joint action.

Neither Mr. Walsh nor Mrs. Walsh drew a salary until about 1941, when there was set up upon the books of the company entries fixing the salary of each at $7200 annually.

In 1935 a certificate of doing business under an assumed name was filed, by which the plaintiff certified that he was the owner of the business of the Walsh Trucking Service. Automobiles used in the business were registered in the name of the Walsh Trucking Service, Michael F. Walsh, owner. Reports to regulatory boards were made over a period of years in which Michael F. Walsh was indicated as the sole owner of the business. Income tax returns were also filed to the same effect. There is no doubt but that Mrs. Walsh had knowledge of the existence of such papers and reports, and in fact took part in their preparation.

With the above background of facts, approach is made to the determination as to the existence of a partnership between Michael and Mabel Walsh in the years 1941, 1942 and 1943, which would warrant the application of the provisions of Sec. 182 of the Internal Revenue Code, 26 U.S.

C.A. Int.Rev.Code, § 182, in the computation of plaintiff's income tax for the above period, insofar as same is affected by the income from the trucking business above referred to.

The matter of the existence of and the recognition of a partnership between close relatives is the subject of many court decisions involving the determination of tax liability. Discussion of precedents is rendered unnecessary by the now well recognized guides afforded by the decision in Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, and re-affirmed by reference in Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. The three quotations set out below indicate the legal yardstick by which the arrangement between the plaintiffs must be measured.

"A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses. When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' Drennen v. London Assurance Corp., 113 U.S. 51, 56, 5 S.Ct. 341, 344, 28 L.Ed. 919; Cox v. Hickman, 8 H.L.Cas. 268. We see no reason why this general rule should not apply in tax cases where the government challenges the existence of a partnership for tax purposes." Commissioner of Internal Revenue v. Tower, supra, at pages 286, 287 of 327 U.S., at page 535 of 66 S.Ct.

"There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital

580

additional services, or does all of these things, she may be a partner as contemplated by 26 U.S.C. §§ 181, 182 [26 U.S.C.A. Int.Rev.Code, §§ 181, 182]. The Tax Court has recognized that under such circumstances the income belongs to the wife." Commissioner of Internal Revenue v. Tower, supra, at page 290 of 327 U. S., at page 537 of 66 S.Ct.

"It is the command of the taxpayer over the income which is the concern of the tax laws. Harrison v. Schaffner, 312 U.S. 579, 581, 582, 61 S.Ct. 759, 761, 85 L.Ed. 1055. And income earned by one person is taxable as his, if given to another for the donor's satisfaction. Helvering v. Horst, 311 U.S. 112, 119, 61 S.Ct. 144, 148, 85 L.Ed. 75, 131 A.L.R. 655. It is for this reason, among others, that we said in Helvering v. Clifford, supra, 309 U.S. [331], 335, 60 S.Ct. [554], 556, 84 L. Ed. 788, that transactions between husband and wife calculated to reduce family taxes should always be subjected to special scrutiny." Commissioner of Internal Revenue v. Tower, supra, at pages 290, 291 of 327 U.S., at page 537 of 66 S.Ct.

The Court was impressed at the trial of this action that the facts relative to the alleged partnership were correctly stated, and for the most part were corroborated by circumstances, actions and records.

Here no written agreement exists, and no witness pretends to give the exact conversation which made up the partnership contract. Plaintiff's testimony, " * * * so I bought it (the business) before we were married with the intention of conducting the business together when we were married," and Mrs. Walsh's statement, " * * * we would go in together and if we could make a success of it, O.K., if not, we would build again; either sink or swim in other words," taken together with facts previously recited as to the operation and control of the business and its finances, lead conclusively to the conclusion that this husband and wife intended and did in fact create a partnership effective on the date of their marriage on June 12, 1926.

To entitle the partnership to recognition in a tax litigation more than the mere agreement is required. That Mrs.

Walsh substantially contributed to the control and management of the business, and performed vital services therein, appears with certainty, and requires no further discussion. Her efforts and her exercise of control and management have been continuous and proportionately increasing with the growth of the business. This is not a case where the income was earned by the husband and shared with the wife. Here both are actual producers of income, and this Court can not assume that the efforts of one were more productive than the efforts of the other.

Capital contribution, even though not necessary for the existence of a partnership, is often an important factor in tax litigation, and since defendant urges that the salary of Mrs. Walsh handled as it was does not constitute a contribution to capital, the subject will be briefly discussed. As above stated, book entries show the receipt of $3229.00 of Mrs. Walsh's salary earned in outside employment during the years 1927, 1928, 1929 and 1930. In addition, the testimony shows that she contributed her salary after her marriage for the balance of the year 1926. This amount seems to be computed for twenty-six weeks at $12 per week, making a total of $312 for 1926. While no entry of that amount is found on the books there is no reason to reject such evidence.

It is true that no capital account was set up and in fact the salary was for the most part considered as an additional receipt of income by the Trucking Service. Surplus of income over expense determined profit, and profit was either transferred to an interest account, or remained as working capital. Mrs. Walsh's contribution then indirectly helped to create a capital account, and defendant's argument is rejected as preferring form over substance.

That Mrs. Walsh's contribution was substantial in amount is not overlooked. Here was no small donation by wife to husband to assist in the struggle of a small business. The contribution was continuous for the period of her outside employment; it constituted her whole earnings. There is no evidence that repayment was expected or intended, and no loan account was set up. The total contribution amount-

ed to $3541, and its importance increases when it is recognized that the net worth of the business was about $8,000 on December 31, 1936. The Court has no hesitation in finding that Mrs. Walsh made contributions to the capital of the partnership from her own earnings during the years 1926 to 1930.

There remains to be considered the effect of the setting up of the salary account for the partners in 1941, and the effect of the papers indicating that plaintiff alone was the owner of the business.

It is apparent that the contention of the plaintiff and his wife relative to the salary item is correct, to wit, that such entries were set up at the instance and suggestion of a representative of the Public Service Commission of the State of New York to be used for rate-making purposes. The very amount of the salary and its equality negatives the argument that the husband was the employer and the wife the employee; rather, it confirms the existence of a partnership, and the equality of the interest of the partners therein.

We would be somewhat less than realistic if we failed to recognize that business transacted between husband and wife has its basis in mutual trust rather than in legal forms. The legal effect of writings was not a consideration between these two parties. They transacted their business in the same manner; each performed the same duties, and the finances of the business received the same treatment both before and after such papers came into existence. The Court refuses to believe that the writings above referred to constituted a repudiation of a relationship which had existed over a period of years. The intention of the parties once found to exist and continuously manifested by courses of conduct will not be deemed abandoned by the occasional contradictory writings without evidence that the legal import of the writings was appreciated and acted upon. The evidence in this case contradicts any such understanding or action.

Judicial precedents other than the Tower and Lusthaus Cases, supra, are of little value, as the decision in each case must turn upon the facts appearing therein.

The recent case of Weizer v. Commissioner, 6 Cir., 165 F.2d 772, is so nearly in point, both as to facts and law, as to warrant reference thereto. A reading of the opinion will show a marked similarity of facts even as to evidence of contradictory statements so as to make it highly persuasive as a precedent in the decision of this case. The case of Fletcher v. Commissioner, 2 Cir., 164 F.2d 182, does not control here, since the unrealities referred to therein do not exist. Other decisions both before and after the Tower decision, such as Wilson v. Commissioner, 7 Cir., 161 F.2d 661; Appel v. Smith, 7 Cir., 161 F.2d 121; Lawton v. Commissioner, 6 Cir., 164 F.2d 380, and Berkowitz v. Commissioner, 3 Cir., 108 F.2d 319, may illustrate the application of the law to a certain set of facts, but are of little value as precedents in themselves.

The conclusion is reached that plaintiff is entitled to judgment.