**Mary M. BALLWEG, Plaintiff,**

v.

**Joseph CALIFANO, Jr., Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**No. CV76–L–52.**

United States District Court,
D. Nebraska.

March 16, 1979.

Thomas A. Wagoner, Grand Island, Neb., for plaintiff.

Thomas D. Thalken, Asst. U. S. Atty., Omaha, Neb., for defendant.

## MEMORANDUM

URBOM, Chief Judge.

On December 19, 1977, an Appeals Council of the Bureau of Hearings and Appeals of the Social Security Administration determined that Mary Ballweg was not entitled to disability insurance benefits under the Social Security Act. It concluded that although the claimant is totally disabled, she had

" . . . failed to submit substantiating evidence in support of her contention that she was a partner with her husband and, therefore, entitled to self employment income for the years 1968, 1969 and 1970, and that these earnings should be removed from her earnings record." Transcript, p. 8

Mrs. Ballweg had received benefits in the amount of $6,179.40 for the years in question. However, the Appeals Council found she was "without fault" in accepting the payments and it waived recovery of that amount. The final decision of the Secretary of Health, Education, and Welfare is before the court pursuant to 42 U.S.C. § 405(g).

There appears to be no dispute that the plaintiff has been totally disabled since she sustained brain damage during an extended period of unconsciousness following surgery in December, 1970. At the time of this occurrence the plaintiff was thirty years old. Most of the oral testimony upon which the decision was based was supplied at the administrative hearing held on May 16, 1975, by the claimant's husband. He testified that he operates a farm and a small auction business.

The plaintiff's work experience was reviewed at the hearing. Upon graduation from high school in 1958 she began working at the Cedar Rapids State Bank and worked there until November, 1961, when she was married and moved to another town. In 1962 and 1963 she worked for short intervals on a part-time basis at the Spaulding City Bank. A letter in the record indicates her employment at the Spaulding bank terminated in July, 1963. Transcript, p. 111. She did not report any income from 1964 through 1967. The Ballwegs' income tax returns for 1968, 1969, and 1970 were amended after the onset of disability to attribute self-employment income to Mrs. Ballweg.

At the hearing Mr. Ballweg outlined what he believed his wife did to merit self-employment status. He stated that she did "practically everything and anything that I did." Transcript, p. 55. He stated that she looked after livestock, helped drive cattle to and from the pasture, did minor veterinary work, raked hay, hauled fuel or provided transportation if equipment was moved from one farm to another, delivered items—including lunches—to the field, and helped move irrigation pipe; that at least once she borrowed money for farm business in her own name; and that when he was hospitalized, she operated the farm.

In an affidavit executed on November 2, 1971, the plaintiff stated that she is co-owner of a farm with her husband and that they operated the farm jointly in 1966, 1967, 1968, 1969, and 1970. Transcript, pp. 111–113. Her duties, which she described as essential to the farming operation, included, besides those already described by her husband, checking water tanks, count-

ing cattle, hauling feed from town with a pickup, making trips to town for machine repairs, preparing meals for extra help, and various other duties. The plaintiff on occasion served as a clerk at auctions which her husband conducted on an average of once every two weeks. The couple was engaged by school districts to inventory vacated schools and sell the property at auction. A letter from Ronald Gillham verifies the fact that the plaintiff worked at several of those sales. Transcript, p. 237. Auctioneers normally split their commission with the clerk on a 50–50 basis, according to Mr. Ballweg, and when the Ballwegs worked an auction together the entire commission was deposited in a joint account.

Mr. Ballweg admitted that the couple never incorporated their businesses or filed any formal partnership papers. The couple did not keep separate bank accounts and Mr. Ballweg never wrote a check to his wife for work performed. Mrs. Ballweg kept the books and separate books for the auction and farming businesses were not kept at that time. Bookkeeping duties required approximately one hour each month; time spent by Mrs. Ballweg in other duties involving those businesses averaged about two hours per day.

Mr. Ballweg inherited his farm from an uncle. He stated that he had told his attorney to have the title to the property listed in both his wife's and his name but he discovered later that this had not been done.

The administrative law judge examined in some detail the financial status of the claimant and her family.

The plaintiff applied for disability benefits on March 23, 1971. She was informed on May 7, 1971, that she did not meet the earnings requirements under the Act and therefore was not eligible for benefits. The Ballwegs filed amended tax returns for the years 1968, 1969, and 1970; they could not file amended returns for earlier years, because the Internal Revenue Code permits the filing of amended returns only within five years of the initial filing. The amended returns reflected self-employment in-

come for Mary Ballweg of $3,418.50 for 1968, $3,565.00 for 1969, and $486.00 for 1970. Social Security self-employment taxes were computed from these figures—$218.79 for 1968, $245.98 for 1969, and $33.54 for 1970.

Following the filing of the amended tax returns the plaintiff applied a second time for disability benefits, asserting that in view of her self-employment she now met the earnings requirements and was entitled to disability benefits. Apparently benefits were paid until August 17, 1973, when the plaintiff was informed that payments were being halted "pending development of [her] entitlement as a disabled wage earner." Transcript, p. 104. She filed for a reconsideration on January 21, 1974, and on August 14, 1974, the Bureau of Disability Insurance Division of Reconsideration made the following findings:

"A person whose disability began between the ages of 24 and 31 must have social security credits for work in at least one-half the calendar quarters in the period beginning with the calendar quarter after age 21 and ending with a quarter before age 31 in which he is disabled. Your social security record shows that you last met this earnings requirement on September 30, 1964. For you to qualify for benefits your disability must have begun on or before that date.

"We are unable to credit your earnings record with self-employment income for 1968, 1969 and 1970 because it has been determined that the arrangement between you and your husband, Mr. Frank Ballweg, was not a partnership.

"The evidence on our records shows that you stopped working in 1965 to help your husband with the farm work. Even though you kept records, made joint decisions on buying cattle, borrowing money and sale of crops and had a joint banking account, there is no indication that a partnership was intended. The evidence indicates your participation in the farm work was by mutual agreement as husband and wife for whom it is normal to have joint funds and engage in mutual

management. Also, the records in the Agricultural Stabilization Committee's Office show the farm operator as your husband, Mr. Frank Ballweg, with no partnership involved. As a result, you do not meet the earnings requirement for disability insurance benefits.

"This action is based upon the additional evidence received and replaces our previous determination.

"Based on this determination, you were not entitled to monthly benefits of $147.10 for July 1971 through August 1972 and $176.60 for September 1972 through July 1973. The amount shown for June 1973 through July 1973 represents benefit payments of $170.30 per month and medical insurance premiums of $6.30 which were withheld monthly from benefits for the same period. Your children were not entitled to monthly benefits of $26.70 each for July 1971 through August 1972 and $32.00 each for September 1972 through July 1973. Therefore, you have been overpaid $6,179.40. The Social Security representative will discuss this matter with you. "Since you are no longer entitled to disability benefits, your hospital and medical insurance coverage ends with the last day of August 1974." Transcript, pp. 106–107

The Division of Reconsideration informed the plaintiff at that time what needed to be proved in order for reimbursement of the overpayments to be waived.

The plaintiff requested a hearing and one was held, as noted above, on May 16, 1975. The administrative law judge rendered his decision on July 14, 1975, in which he concluded, in part:

"(5) That the Claimant has not established that she was insured for disability purposes beginning December 25, 1970, the alleged onset date of her disability considering either her own wage earnings record or the self employment income attributed to her from the farming enterprise; that without the farm income, her insurability expired on March 31, 1964, and with that income considered, it expired on March 31, 1970; and that she

was improperly granted benefits because of the lack of insured status under either insuring provision of the Act;

"(6) That the income attributed to the Claimant from the amended tax returns for 1968, 1969, and 1970, were improperly allocated to the Claimant's wage earnings record because the applicant did not fully and equally participate with her husband in either the farming or auction businesses;" Transcript, p. 30

Because the administrative law judge found fault on the part of Mrs. Ballweg in the creation of the overpayment, he concluded that she must repay the $6,179.40. This decision was affirmed by the Appeals Council on January 19, 1976. This lawsuit was filed on March 17, 1976, and on the motion of the defendant the case was remanded for further consideration by the Secretary of Health, Education, and Welfare on August 13, 1976.

Certain additional documents were made a part of the administrative record on remand. See Transcript, pp. 232–253. One Report of Contact indicates that one quarter of land has since 1963 been recorded in the names of Frank and Mary Ballweg as co-owners; another quarter section was still in the estate of Frank Ballweg's mother, also named Mary Ballweg. Transcript, p. 234. Other documents consist of letters written by persons who know the Ballwegs and state that Mary Ballweg operated the farm and worked auctions in conjunction with her husband. Transcript, pp. 236–238, 242. Mrs. Anna Ballweg, an aunt of Frank Ballweg, stated that she owns a quarter section of land which from 1952 through 1961 she leased to Frank Ballweg and which from 1962 until the present date she leased to Frank and Mary Ballweg. Transcript, p. 241.

On December 19, 1977, the Appeals Council issued its second decision. The Council stated:

"The investigation showed that the claimant became a joint owner of part of their farm land in 1963, and affidavits from several persons indicate that she helped her husband on the farm, assisted her

husband at auction sales, and in operating leased farm land (Exhibits AC–2, 4, 5, 6, 8, 9). None of these affidavits show that the claimant was performing any more than her spousal duties in helping her husband. There is no evidence in the record that a partnership was intended by the claimant and her husband. In fact, the affidavit of the claimant dated November 1, 1971, indicates that she was 'co-owner' of the farm and outlines her duties in detail, confirming that she was not a material participant in the operation of the farm (Exhibit 11).

"The Social Security Office in Grand Island attempted on numerous occasions to obtain information from the claimant's husband which would support their allegation that the farm was indeed a partnership (Exhibit AC–3, AC–11). Finally, on July 14, 1977, the claimant's husband furnished short replies to a series of questions posed by the Social Security Office. This was more than six months after the first request was made of Mr. Ballweg. The replies to the questions (Exhibit AC–10) were offered without substantiating evidence on the part of Mr. Ballweg, and contain no confirmation of their allegation that their farm and auction businesses were actually a partnership.

"Social Security Regulation No. 4, Section 404.701(b) specifies the penalty for failure to submit requested evidence of eligibility after the Administration has informed the claimant what evidence is necessary for a determination as to eligibility. This regulation indicates: 'The applicant's failure to submit evidence as requested by the Administration shall be a basis for determining that the conditions of eligibility concerning which such evidence was requested have not been met.'

"There is no evidence in the record confirming that the claimant and her husband entered into the arrangement with the intent to conduct a business as a partnership. Rather, it seems to have evolved through the years as a farm and auction business belonging to Mr. Ballweg with assistance from the claimant. The Appeals Council finds that the claim-

ant has failed to submit substantiating evidence in support of her contention that she was a partner with her husband and, therefore, entitled to self employment income for the years 1968, 1969 and 1970, and that these earnings should be removed from her earnings record.

"Since the claimant did not have quarters of coverage for the years 1968, 1969 and 1970, she did not meet the special earnings requirements of the Act on or before the date of her alleged disability, December 25, 1970. Therefore, the claimant is not entitled to a period of disability or disability insurance benefits and was overpaid $6,179.40." Transcript, pp. 7–8

The Council did conclude that Mrs. Ballweg was without fault with respect to the overpayment and determined that recovery of it should be waived.

A briefing schedule was set by this court. The case is now ready for resolution.

There is no question that the plaintiff is totally disabled. The only issue the court must resolve is whether at the time of the onset of her disability the plaintiff satisfied the earnings requirement of the Social Security Act. See Tit. 42 U.S.C. §§ 416(i)(3) and 423(c)(1). The Appeals Council conceded in its final opinion that if the farm and auctioneering income were credited to Mrs. Ballweg, the earnings requirement would be fulfilled. Transcript, p. 7.

Quarters of coverage are acquired either by earning $50.00 or more in wages or by being credited with $100.00 or more of self-employment income. Tit. 42 U.S.C. § 413(a)(2). The plaintiff does not claim she was an "employee" during the years 1968 through 1970. Indeed, "[s]ervice performed by an individual in the employ of his spouse" is excluded from the definition of "employment" under the Act, 42 U.S.C. § 410(a)(3)(A); such wages, therefore, could not be considered in computing her quarters of coverage.

The plaintiff believes the income resulted from a business owned and operated by her and her husband as either partners or co-proprietors. Net income for self-employ-

ment is derived from carrying on a trade or business, 42 U.S.C. § 411(a); "trade or business" has the same meaning as when used in the Internal Revenue Code of 1939, 26 U.S.C. § 23. 42 U.S.C. § 411(c).[1]

"The Internal Revenue Code itself does not define the phrase 'trade or business'. Nor has any court formulated an explicit definition. On the contrary, it has been stated that 'To determine whether the activities of a taxpayer are "carrying on a business" requires an examination of the facts in each case.' *Higgins v. Commissioner,* 1941, 312 U.S. 212, 217, 61 S.Ct. 475, 478, 85 L.Ed. 783. Broader criteria have been suggested. For example, it is generally agreed that to constitute a trade or business an activity must be initiated and carried on with the good faith intention of making a profit. . . In addition, it is frequently stated that ' " * * * carrying on any trade or business", within the contemplation of [§ 162] involves holding one's self out to others as engaged in the selling of goods or services.' . . . " *McDowell v. Ribicoff,* 292 F.2d 174, 176–177 (C.A. 3rd Cir. 1961), cert. denied 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 135 (1961).

 In this case, the Secretary found no intent on the part of the Ballwegs to conduct the businesses as a partnership and concluded that Mrs. Ballweg was not a material participant in either business. Language from *Commissioner of Internal Revenue v. Tower,* 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 415 (1946), aids the assessment of the adequacy of the Secretary's conclusion. That case, which interpreted the term "partnership" for purposes of the Internal Revenue Code, stated:

" . . . A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses. When the existence of an alleged

partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' *Drennen v. London Assurance Co.,* 113 U.S. 51, 56, 5 S.Ct. 341, 344, 28 L.Ed. 919; *Cox v. Hickman,* 8 H.L.Cas. 268. . . .

\* \* \* \* \* \*

"There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws." 327 U.S. at 286–287, 290, 66 S.Ct. at 535–36, 537.

The Secretary's decision in the instant case is supported by substantial evidence.

The government correctly notes that there existed no "overt indicia" of a partnership—the Ballwegs did not maintain a partnership bank account, had no written agreement, did not deal with third parties under a partnership name, and kept no sep-

---

1. In *McDowell v. Ribicoff,* 292 F.2d 174, n. 2 (C.A. 3rd Cir. 1961), cert. denied 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 135 (1961), the court, in accordance with 26 U.S.C. § 7852(b), deemed § 411(c) as applying to § 162 of the 1954 Internal Revenue Code.

arate books or records. These indicia may not be prerequisites to the existence of a partnership, but they bear on establishing the intent to carry on the enterprise as a partnership. Mrs. Ballweg did contribute some services to the operation of the farm, but I cannot say that the administrative law judge erroneously described those services as insubstantial. The plaintiff devoted approximately fourteen hours each week to farming—a small fraction of hours necessary to manage a farm. Some of the land farmed may have been owned jointly by Mr. and Mrs. Ballweg, but the land had not been contributed by Mrs. Ballweg. It had previously been held by her husband and later transferred to joint ownership. No other capital was supplied to the partnership by the plaintiff. The fact that Mrs. Ballweg borrowed money once or twice or dealt with local merchants in her own name does not alone alter this result.

The plaintiff's case with respect to the auctioneering business is stronger, but I nevertheless find myself bound by the Secretary's determination, as it is supported by substantial evidence. Again, there were no overt indications that this business was to be considered a partnership. The only suggestion that it might be such an entity lies in Mrs. Ballweg's occasional clerking. The record does not clearly establish the percentage of auctions which she clerked; Mr. Ballweg testified only that she did so on "many occasions." Transcript, p. 57. He stated that his wife spent one hour each month performing bookkeeping functions. Transcript, p. 60. I find nothing in the record to aid in determining the amount of money attributable to the plaintiff from this business alone. The plaintiff had the burden of showing that she earned an amount of self-employment income totaling at least $100 for each quarter of coverage she claims.

The plaintiff contends that even if her partnership argument fails, she could recover on the theory that the businesses were run by her and her husband as co-proprietors. She relies upon *Rasmussen v. Gardner,* 374 F.2d 589 (C.A. 10th Cir. 1967), and *Dickmann v. Finch,* 315 F.Supp. 1071 (U.S. D.C. E.D.Wis.1969).

In *Rasmussen,* the United States Court of Appeals for the Tenth Circuit ruled that a claimant who owned a hotel with her husband as co-operator, co-worker, and co-tenant and who actively participated in the operation of the hotel in a substantial manner "was entitled to claim part of the self-employment income resulting from operation of the hotel as *her* self-employment income." 374 F.2d at 594.

In *Dickmann,* the court concluded:

"The court is of the opinion that the rule of *Rasmussen v. Gardner,* supra, is applicable to the circumstances of this case, where plaintiff and his wife jointly owned the property, and equally participated in its operation. The record does not reflect that plaintiff was the controlling manager, guiding light, or moving spirit of the enterprise to warrant attributing income derived from the labors of his wife to his earnings account. Cf. *Hellberg v. Celebrezze,* 245 F.Supp. 390 (W.D.Mo.1965); *Poss v. Ribicoff,* 289 F.2d 10 (2nd Cir. 1961); *Dondero v. Celebrezze,* 312 F.2d 677 (2nd Cir. 1963). And see *Rhoads v. Folsom,* 252 F.2d 377 (7th Cir. 1958) (crediting each wage earner with salary earned according to the services rendered)." 315 F.Supp. at 1073.

The administrative law judge distinguishes these cases, reasoning that the husbands and wives contributed equally to the enterprises. While equal involvement may not be necessary, I am satisfied that substantial participation is required to recover under this approach. The administrative law judge's finding that Mrs. Ballweg did not participate materially in the businesses, a finding I conclude is supported by substantial evidence, precludes a finding in the plaintiff's favor on this issue.

■ Finally, the plaintiff complains of the "windfall" inuring to the benefit of the Social Security Administration. In her brief the plaintiff states that the Social Security Administration has reduced the self-employment income credited to her husband's social security earnings record

because of the revised tax returns. Transcript, p. 143.

" . . . The result of the Social Security Administration's actions if they are allowed to prevail under their present theory would be that Mr. Ballweg's self-employment income account has been reduced because of the amended returns, however, correspondingly, they are contending that Mrs. Ballweg is not entitled to credit for this amount. . . . We submit that the Social Security Administration by their unilateral action of reducing Mr. Ballweg's account on August 15, 1972, should be precluded from asserting that the earnings paid to the Social Security Administration should not, therefore, now be credited to Mrs. Ballweg." Plaintiff's brief, p. 6.

The plaintiff argues that the government should not be permitted to argue inconsistent theories. The plaintiff raised this argument at the hearing before the administrative law judge, but he did not mention it in his opinion. The plaintiff cites no authority for this position, and I conclude that such a procedure is not warranted. My only concern here is with the propriety of Mrs. Ballweg's account. Mr. Ballweg must seek other means of correcting his earnings record.

Judgment will be entered for the defendant.