## L. C. OLINGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14131.    Promulgated March 16, 1948.

*S. Augustus Black, Esq.,* for the petitioner.
*Newman A. Townsend, Jr., Esq.,* for the respondent.

424

#### OPINION.

JOHNSON, *Judge*: Respondent defends his determination that all income of L. C. Olinger & Co. is taxable to petitioner in 1943, contending that no bona fide partnership existed between petitioner and his wife because there was no agreement of partnership, petitioner conducted the business as sole owner, and the wife contributed no vital services or capital. He regards the partnership alleged as a theory advanced solely for tax avoidance and unsupported by the evidence. Petitioner admits that no written agreement was signed until March 1944 (and even that was not introduced in evidence), but he contends that the evidence supports a finding that his wife contributed $6,000 capital and rendered vital services to the business, thereby participating to a degree which requires the recognition of a partnership for tax purposes under the doctrine set forth in *Commissioner* v. *Tower*, 327 U. S. 280, and *Lusthaus* v. *Commissioner*, 327 U. S. 293.

With some hesitation we have found that the wife did contribute $6,000 as petitioner alleges. This finding is supported directly only by their own oral testimony that the wife hoarded in cash all or nearly all the royalties received by her over the years, keeping bills of large

denominations in a deposit box at a bank or at home, although she maintained a bank account. In Toronto she rented a safe deposit box at a bank and kept her money therein, but in Dallas she claims to have kept bills aggregating as much as $25,000 in an iron box hidden in a hole in the basement of her residence. This cache was known only to herself and husband, and the funds remained there even when she was absent, as in spending the summers of 1940 and 1941 in Columbia. Petitioner testified that, after acquiring the home in Dallas in 1937, or two years after they had moved there to reside, he returned to Toronto, removed the bills, which he vaguely estimates at $15,000, and personally brought them to Dallas for hiding in the basement. The increase to $25,000, which his wife gave as the maximum accumulation in Dallas, we note, can not be explained by receipts of royalties for two years. Although petitioner and wife maintained a joint bank account in Dallas, their testimony is that she brought $500 in bills from Dallas to Columbia when petitioner opened his own claim adjustment office in 1940; that in the summer of 1941 he accompanied her from Columbia to Dallas, took $2,500 from the basement box, and returned with the bills to Columbia, where he invested it in the taxicab venture; that on coming to Columbia to spend the summer of 1941, she brought in bills the $3,000 used to purchase Timmons' interest. No receipts were given for these funds, and neither witness disclosed much assurance about the amount in the box at any time or what has since happened to the remainder of the hoard. They still have the box, but there is little in it, and the wife's royalties are now deposited in a bank.

This unusual handling of currency and the wife's alleged contributions rest almost entirely on the oral testimony of petitioner and the wife. That she did make contributions to the business, however, derives some additional support from petitioner's secretary, who was employed by National Lloyds Insurance Co. when he arrived in Columbia and who remained with him after he had established an independent business. He discussed his plans with her and she attended to his banking matters, and on this background she testified that he was unable to furnish the required cash for independent ventures and that she knew that he had gotten it from his wife, although she did not explain how she knew it. We also attach some significance to Timmons' statement that in paying for his interest petitioner paid the $3,000 in bills, "most of them $20 bills," and the bill of sale, signed by him and introduced in evidence, is made "to L. C. Olinger and Stella Olinger." Weighing this evidence in the light of petitioner's failure to keep any adequate records for three years after he had initiated his own business, we have found, although not without some doubt, that $6,000 was contributed by the wife, and we have also found that the wife rendered certain services to the car-renting business. We have

not found them to be vital, however, because she appears rather to have "helped out" in meeting emergencies, particularly in 1942, when the business was in its initial stages and petitioner could not afford to employ assistants, but she performed very little service in 1943, the taxable year.

Petitioner stresses, however, the contribution of capital is sufficient to support recognition of a partner wife for tax purposes, and we agree. But, while this finding would warrant recognition of the wife as a partner taxwise if a partnership existed, we are unable to find that one did, for nothing in the record indicates that petitioner and his wife ever had any agreement, oral or written, express or implied, to enter into a partnership relation prior to their signing of the written agreement in 1944. In *Commissioner* v. *Tower*, *supra*, the Supreme Court, purporting to deal with a partnership valid under state law, gave the following definition as the background of its approach to the issue presented:

> * * * A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession or business and when there is community of interest in the profits and losses. * * * whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both * * * is a question of fact, to be determined from testimony disclosed by their "agreement, considered as a whole, and by their conduct in execution of its provisions." *Drennen* v. *London Assurance Company*, 113 U. S. 51, 56; *Cox* v. *Hickman*, 8 H. L. Cas. 268. * * *

This definition and commentary, we believe, hold good for the meaning of partnership as expanded by section 3797, Internal Revenue Code, to include "a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on."

The great preponderance of evidence here adduced indicates affirmatively that petitioner and his wife did not regard themselves as partners, joint venturers or members of a syndicate or pool. They do not appear to have discussed or expressly reached any understanding about a division of profits and losses, control of the business, contributions of capital and services or participating interest. When petitioner needed $500 to start his claim adjustment business in 1940, his wife furnished it, and he continued as before to support the family with his earnings. When he needed $2,500 and later $3,000 in 1941 for his new venture, she furnished those amounts, and when she happened to be in Columbia, she assisted him in the enterprise. But she did not join with him, Jolliff, and Timmons in applying for the incorporation of Diamond Trading Co., or in the petitions and litigation for a permit to operate taxicabs, or in applying for a permit to rent cars. Petitioner became a partner with others, but not with her,

*Burnet* v. *Leininger*, 285 U. S. 136. Thereafter her name did not appear as employer on declarations to the Social Security Office, or employer's tax returns, or withholding tax returns, and no partnership is mentioned on any income tax return filed prior to 1944. Petitioner on the contrary consistently represented himself as the "owner" of the business, and the cars used in it were registered in his name or that of the dormant corporation which was never completely organized.

Such a showing conceivably would not be incompatible with the existence of a partnership if an agreement between the alleged partners were established or could be inferred from acts of the parties. But it does not indicate any partnership agreement and, with one exception, such further evidence as appears affirmatively rebuts the view that petitioner and his wife had any such agreement. While the wife took money from the cash box of the business when she wished, she explained that most of the profits were reinvested in the business, "I would say all except living expenses from the profits of 1943." No record at all was kept of her withdrawals, which obviously were used to discharge petitioner's duty of support, and hence their purpose and the manner of withdrawal refutes the view of a division of profits on a business basis. More significant still is the testimony of petitioner and of Lasley that petitioner did not mention any partnership when Lasley was engaged to set up an accounting system, and, so far as the record shows, no one had ever thought of the business as a partnership until petitioner informed Lasley that his wife had put in some money. Lasley thereupon suggested a written partnership agreement, but, when he returned in February 1944 to prepare income tax returns, he found that no action had been taken on the suggestion. As petitioner said nothing of a partnership to the revenue agent who had previously examined such records as were available, we infer that the idea of a partnership originated with the accountant and that this was an accountant-inspired "partnership."

We have taken note that Government bonds were bought in the names of "L. C. Olinger or Stella Olinger" with funds of the business and that Timmons' bill of sale of his interest is to petitioner and the wife. The bonds, however, were recorded as business assets by the accountant and hence not distributed, and, while the bill of sale does give slight color to petitioner's claim, we deem it overweighed by a great preponderance of the evidence. Unlike the case considered in *Weizer* v. *Commissioner* (C. C. A., 6th Cir.), 165 Fed. (2d) 772, petitioner, so far as shown, never represented his business as a partnership, and, unlike the case considered in *Wilson* v. *Commissioner* (C. C. A., 7th Cir.), 161 Fed. (2d) 661, the record discloses no agreement, express or implied by conduct, that petitioner and his wife

should share profits equally. Failing such understanding between the parties, we hold that no partnership existed. Cf. *Schreiber* v. *Commissioner* (C. C. A., 6th Cir.), 160 Fed. (2d) 108, affirming 6 T. C. 707; *Fred W. Ewing*, 5 T. C. 1020; affd. (C. C. A., 6th Cir.), 157 Fed. (2d) 679; *Felix Zukaitis*, 3 T. C. 814.

In a second assignment petitioner charges the Commissioner with error in adding to income for 1943 oil royalties of $635.80. Petitioner testified that his wife was the owner of interests in oil-bearing lands, and that he owned no such interests and had received no royalties. As this testimony was not contradicted or weakened, and his wife's right to and receipt of royalties are well established, the Commissioner's determination in this respect is reversed.

*Decision will be entered under Rule 50.*