W. R. Davis v. Commissioner.
W. Davis v. Commissioner
Docket No. 13589.
United States Tax Court
1948 Tax Ct. Memo LEXIS 186; 7 T.C.M. (CCH) 293; T.C.M. (RIA) 48089; May 18, 1948
*186 Frank J. Wills, Esq., 825 Pyramid Bldg., Little Rock, Ark., for the petitioner. Stanley B. Anderson, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $17,460.86 in petitioner's income and victory tax for 1943, and additions to tax on account of negligence in the amounts of $565.14 and $873.04 for 1942 and 1943, respectively. Due to the petitioner's failure to maintain adequate records, as required by section 54 of the Internal Revenue Code, the taxable income for 1942 and 1943 was determined on the basis of an increase in the petitioner's net worth and an estimate of his personal and living expenses during each year. The Commissioner further determined that the entire income of an alleged partnership purportedly existing between the petitioner and his wife during 1942, and between the petitioner, his wife and son during 1943, is taxable to the petitioner. The following issues are presented for decision: (1) Whether the entire income of the alleged partnership during 1942 and 1943 is taxable to the petitioner. (2) Whether the determination of the petitioner's taxable income *187 on the net worth basis should be adjusted for (a) depreciation of buildings, automobiles and equipment for 1942 and 1943, (b) elimination of an item of prepaid insurance for 1943, (c) and reduction of estimated living expenses for 1942 and 1943. (3) Whether the petitioner is subject to additional tax on account of negligence for 1942 and 1943. On brief the respondent concedes that the petitioner's net worth at December 31, 1943, should be reduced by the amount of $1,556.25 in order to reflect the correct cost of U.S. Savings Bonds on hand at that date. Findings of Fact The petitioner resides on the outskirts of Little Rock, Arkansas. He filed tax returns for the years involved herein with the collector of internal revenue for the district of Arkansas. The petitioner and his wife, Lula, were married in 1922. At that time he was employed as the ticket agent and postmaster of Cartney, Arkansas, at a compensation of about $100 per month. His wife, before her marriage, worked as a stenographer at a salary of about $15 or $20 a week. The post office was located in a store building which was owned by the petitioner. He also operated a ferry and bought cedar posts and railroad ties. *188 He and his wife lived in the store building after their marriage and decided to conduct a grocery and dry goods store in that building in addition to the petitioner's other activities. The merchandise for the store was purchased for approximately $400 which was advanced by the petitioner's wife from her savings, proceeds from the sale of a piano, and the surrender of a life insurance policy, all of which constituted her separate property. Shortly after the store was opened the petitioner built a lean-to on one side of the building for living quarters. The petitioner's wife worked in the store when he was absent. She also made out the petitioner's reports for the ticket agency and the post office. In 1924 the petitioner and his brother, Herschel, started to manufacture rubber boots or patches for automobile tires. This business was conducted in a factory building at Cartney which was purchased for $1,400. Herschel had no money. The factory, the vulcanizing molds and other equipment used in the business were purchased with funds realized from the liquidation of merchandise from the store hereinbefore mentioned. Later, another brother, Henry, worked with the petitioner and Herschel *189 in the rubber business. Both brothers lived with the petitioner and his wife. The profits from the rubber business were used for living expenses and for the expansion of the business, without accounting among the parties. In 1926 the petitioner, his wife and his brothers moved to Picron, near Little Rock, in order to be closer to the source of supplies and the market for the rubber business. The petitioner and his brothers continued to work together at Picron. The petitioner's wife assisted them in the business, and answered the telephone, made out the bills and handled the bank account. In 1928 the petitioner withdrew from the rubber business which was left in the hands of his brothers. He received as his share of the business a large stock of materials, an automobile and two trucks, about $2,000 in cash and a note from his brothers of approximately $4,700. He was not asked to, and did not, make any accounting to his wife with regard to the properties thus received. The petitioner then started an automobile wrecking business, known as the Davis Wrecking Co. This business consisted of acquiring discarded or wrecked cars, taking off the parts and salvaging them for resale. The parts *190 that could not be reconditioned were sold as junk. The wrecking business was conducted, at first, on a rented tract where the petitioner and his family lived in a small house which had no conveniences. The petitioner's wife persuaded him that they should have a better house which was located on a four-acre tract across the road. This property was purchased in 1929 for $160 in cash and the assumption of an unpaid balance of $4,530.57 due on a note; the principal and interest was payable in monthly instalments of $35. Title was taken in the name of the petitioner's wife. The wrecking business was also moved to the new site. In 1931 the petitioner began the construction of a three-story building which had an area of 162 x 108 feet and was located within a few feet of the house. A large part of the ground floor and a ramp to the second floor were made of concrete; the upper floors were made of three-inch long leaf pine and the roof was made of corrugated asbestos-covered metal which had been salvaged from other buildings. The building was completed about January 1, 1936, at a cost of $20,000. Its useful life as of that date was 40 years. In 1939 the petitioner constructed another building *191 on an area of 140 x 90 feet. It was made of iron or steel with a row of glass all around it. This building cost $7,500 and its useful life was 33 1/3 years from the date of construction. Both buildings were used in the wrecking business. The petitioner employed numerous men in the business. The petitioner and his wife have three children. A son, Atley, was born on January 16, 1923; two daughters, Muriel and Margaret, were born on November 15, 1925, and May 18, 1931, respectively. In addition to her household duties the petitioner's wife made out bills for the wrecking business. She answered the telephone and waited on customers if necessary. On occasion she dismissed employees for drinking. The petitioner and his wife never had an agreement of partnership and no partnership accounts were ever set up. They had an oral understanding with each other that at all times, if anything happened, or if they "split up", she would get half of everything he had. They have always had a joint bank account from which she withdrew money for living and household expenses, investments in War Bonds and the purchase of a piano. Atley worked after school, on Saturdays and during vacations in the wrecking *192 business. While attending junior college he received an allowance of $15 or $20 per week. The petitioner told him that upon graduation in June 1942 he could have a one-third interest in the business. After graduation he worked full time until November 5, 1942, when he went into the Army. On July 14, 1942, he had been authorized to draw checks against the joint bank account of the petitioner and his wife. He did not receive any salary during 1942 but he withdrew from the account about $15 or $20 a week. He never made any contribution of capital to the business. After being released from the Army on January 4, 1946, Atley returned to work in the wrecking business. The petitioner filed individual income tax returns for the years 1938 through 1943. His wife filed an individual return for 1943 in which she answered question 1 as follows: "Did you file a return for any prior year? No." The petitioner and his wife each reported as income in their returns for 1943, one-third of the amount reported as net income in a partnership return for 1943 which was filed by the petitioner for the Davis Wrecking Co. The petitioner, his wife and Atley were named in this return as equal partners. On July 15, 1944, a *193 delinquent partnership return for 1942 was filed by the petitioner for the Davis Wrecking Co. The petitioner and his wife were named as the two partners, but a salary of $2,400 was deducted before arriving at the petitioner's share of a loss reported in this return. Employer's tax returns were filed for the Davis Wrecking Co. The returns for the first two quarters of 1943 were signed "W. R. Davis, Owner"; the return for the third quarter of 1943 was signed "L. M. Davis, Bookkeeper"; the return for the final quarter of 1943 was signed "W. R. Davis, Partner". The petitioner and his wife did not intend to carry on any business as partners during 1942 and 1943. The petitioner and his son, Atley, did not intend to carry on any business as partners during 1943. In determining the petitioner's taxable income for 1942 and 1943 the Commissioner allowed depreciation of $330 for 1943 on machinery which was acquired in 1942. This is the equivalent of a reasonable allowance for depreciation on that machinery. The petitioner acquired in May 1939 a Dodge wrecker and winch at a cost of $1,000, in July 1939 a second Dodge wrecker and winch at a cost of $1,000, and on July 1, 1940, a Lincoln *194 Zephyr wrecker at a cost of $750. Each wrecker had a useful life of 5 years when acquired. On September 3, 1941, property known as the Pettey property was acquired at a cost of $2,246.58. The title to this property was taken in the name of the petitioner's wife. The allocable cost of a frame house on this property was $750. It had a useful life of 33 1/3 years when acquired. On May 30, 1942, property known as the Hodges property was acquired at a cost of $5,541.32. The title to this property was taken in the names of the petitioner and his wife. This property contained a frame house and a filling station, the allocable cost of which was $2,000 and $2,300, respectively. Each building had a useful life of 33 1/3 years when acquired. On April 30, 1943, property known as Oak Forest was acquired at a cost of $10,000. The title to this property was taken in the names of the petitioner and his wife. The allocable cost of a brick building on this property was $9,000. It had a useful life of 50 years when acquired. On November 24, 1943, property known as the Morton property was acquired at a cost of $5,450. The title to this property was taken in the names of the petitioner and his *195 wife. The allocable cost of a frame house on this property was $450. It had a useful life of 33 1/3 years when acquired. On November 24, 1943, the property known as the Moore tract was also acquired. Its cost was $120, and not $350, as determined by the respondent. Opinion KERN, Judge: The first question is whether the entire income from a business conducted under the name of the Davis Wrecking Co. during 1942 and 1943 is taxable to the petitioner. The respondent determined that the petitioner and his wife were not carrying on that business as partners during 1942, and that petitioner and his wife and his son were not partners in the business during 1943. The applicable principles are stated in Commissioner v. Tower, 327 U.S. 280, and Lusthaus v. Commissioner, 327 U.S. 293, and in many opinions of this Court and the various Courts of Appeal, and need not be repeated here. The petitioner has shown that his wife advanced about $400 for the purchase of the stock of a country store which they opened in 1922. He argues that she not only furnished the major part of the original investment in the store, but that she also performed vital services in the business *196 which was subsequently conducted under the name of the Davis Wrecking Co. The petitioner's argument assumes that an undefined part of the capital used in the wrecking business is traceable to the wife's investment in the store. There is serious doubt in our minds whether the present record would permit us to go that far. The evidence is that the petitioner participated in a series of enterprises and that he considered himself to be the owner of the assets used in all of those businesses. His wife never made any claim upon him for the original investment in the country store, and nothing in the record indicates that she was recognized as having an interest in the succeeding businesses. We also question whether petitioner's wife contributed to the business services of such a vital nature as to warrant recognition of the wife as a partner for tax purposes on account of such services. However, in our opinion it is not necessary to make a decision as to the capital and/or services contributed or rendered to the business by the wife, for it is clear from the record that neither petitioner nor his wife intended to create and conduct a partnership during the taxable years or before. In this *197 respect the instant case is similar to L. C. Olinger, 10 T.C. 423 (March 16, 1948). In that case we said: "Petitioner stresses, however, the con tribution of capital is sufficient to support recognition of a partner wife for tax purposes, and we agree. But while this finding would warrant recognition of the wife as a partner tax-wise if a partnership existed, we are unable to find that one did, for nothing in the record indicates that petitioner and his wife ever had any agreement oral or written, express or implied, to enter into a partnership relation prior to their signing of the written agreement in 1944. * * *" In the instant case we are unable to conclude from the record that petitioner and his wife ever created a partnership either by express contract or otherwise; or that either of them intended that a partnership should be created. The petitioner also claims that his son, Atley, has been entitled to one-third of the profits of the Davis Wrecking Co. since January 1, 1943. It is neither alleged nor proved that Atley made any capital contribution to the wrecking business. Atley was told that he could have an interest in the business upon graduation from a *198 junior college in June 1942, but no completed gift in praesenti was made to him. Petitioner does not claim that any income of the business was paid to Atley as a "partner" during 1942, although he rendered full time service from the time of his graduation until his induction into the Army in November 1942. There is no record that he was made a partner on January 1, 1943, except that a partnership return for 1943 was filed and the petitioner, his wife and his son were named therein as equal partners. No contract or instrument in writing was ever executed purporting to make Atley a partner or defining his rights and duties as such. In 1943 Atley was in the Army. Obviously, the petitioner and his son had no intention of carrying on a business as partners on the basis of Atley's services during 1943. The record will not support a conclusion that petitioner, his wife and his son were, in fact, carrying on business as a partnership in 1943. We sustain the respondent's determination with respect to the partnership issues for 1942 and 1943. With the exception of the penalties, the remaining questions deal with the respondent's determination of the amount of the petitioner's income. The *199 petitioner has not contested the method of determining his taxable income for 1942 and 1943 on the basis of an increase in his net worth and an estimate of his personal and living expenses during each year. The questions are whether adjustments should be made to specific amounts used in the determination. The first group of adjustments relates to the depreciation to be allowed during 1942 and 1943. The petitioner contends that additional depreciation of buildings, automobiles and equipment is allowable. The respondent agrees in part. These issues have been resolved in the findings of fact with the exception of the allowance for depreciation of equipment. The petitioner claims that he is entitled to a deduction for such depreciation at the rate of 10 per cent. He introduced an exhibit which purports to show the cost of the machinery and equipment upon which respondent has allowed no depreciation. It is impossible to determine from the record when most of the equipment was acquired, and therefore, whether or not the useful life of the equipment expired prior to the taxable years. There is also evidence that the petitioner, who operated on a cash basis, charged the cost of the equipment *200 as an expense or as the cost of goods. Accordingly, we have made no findings as to this machinery and equipment and make no allowance for additional depreciation on account thereof. The petitioner further contends that an adjustment should be made by eliminating an item of prepaid insurance for 1943. This item was included as an asset in the schedule which was attached to the deficiency notice to show an increase in the net worth and expenses of the petitioner. He argues that to include this as an asset is to put him on an accrual basis, whereas he was on a cash basis. We are not concerned here with any question of accrual. The item of prepaid insurance represents an investment which is properly includible in the schedule to show an increase in the petitioner's net worth. We so hold. The petitioner further contends that the respondent overestimated his living expenses during the taxable years. He testified that he lived modestly, paid no rent, raised a garden, and neither took vacations nor had expensive hobbies. He estimates that his living expenses were $1,500 for 1942 and $1,800 for 1943, or half of the amounts used in the respondent's determination. There is little positive *201 or specific evidence. We know that the petitioner's family consisted of his wife and three children, and with the exception of Atley, we know little else about his family. We are, in general, unable to say that respondent erred in his determination. However, we think that some allowance should be made for the fact that Atley was in the Army during all of 1943, and that petitioner thereby was relieved of his support. The amount necessary for Atley's support may be approximated exactly enough for this purpose by considering the amounts paid to, or withdrawn by, him in 1942. Accordingly, we hold that the respondent's determination of the petitioner's living expenses for 1943 should be reduced in the amount of $800 for that year. The record in this proceeding was held open for thirty days at the request of the parties to allow the introduction of a stipulation concerning the amount of War Bonds owned by the petitioner at December 31, 1943. The parties have failed to file such a stipulation, but in his brief the respondent concedes that the petitioner's net worth at that date should be reduced by the amount of $1,556.25 in order to reflect the correct cost of the bonds in question. We *202 sustain the respondent's determination of the cost of the War Bonds, as adjusted for the amount conceded by him on brief. The final question is whether the petitioner is subject to addition to tax on account of negligence for 1942 and 1943. These additions were determined under section 293 (a) because of the petitioner's failure to maintain adequate records, as required by section 54 of the Internal Revenue Code. The deficiency for 1943 was determined by a method which was held to be required by the petitioner's failure to keep records sufficient to show his tax liability for 1942 and 1943. Hence, the respondent contends that the "deficiency is due to negligence" within the meaning of section 293 (a). The petitioner has not contested the method used in determining his taxable income, and he has not attempted to prove that he kept adequate records, or that he used reasonable care in reporting his income. He relies on Wilson Bros. & Co. v. Commissioner, 124 Fed. (2d) 606, where it was said that the taxpayer's bookkeeping methods "do not appear to have anything to do with the penalty for negligence", and Bennett v. Commissioner, 139 Fed. (2d) 961, *203 where the deficiency resulted from deductions which were said to be "clearly the result of a mistaken conception of the taxpayer's legal rights." Here the petitioner had the burden of showing that the deficiency was not due to his negligence in failing to keep the records prescribed by section 54. Gibbs and Hudson, Inc., 35 B.T.A. 205. There is no evidence upon which we can conclude that petitioner has successfully borne this burden. Decision will be entered under Rule 50.