Gaynell Wilkins Roedel v. Commissioner.
Roedel v. Commissioner
Docket No. 69684.
United States Tax Court
T.C. Memo 1960-235; 1960 Tax Ct. Memo LEXIS 57; 19 T.C.M. (CCH) 1315; T.C.M. (RIA) 60235; October 31, 1960
*57 By agreement between Arthur Murray, Inc., of New York City, as licensor, and petitioner's husband and petitioner, as licensee, the licensor granted to the licensee the use of the name, "Arthur Murray", in connection with the operation of a dancing school in Albany, New York. This license agreement was in effect during 1948 and 1949, the taxable years here involved. Petitioner contributed $1,000 of her own funds to the business when it commenced in 1947. She rendered services thereto during the taxable years by interviewing, handling publicity, and teaching children's dancing classes. There was neither a written nor oral agreement between petitioner and her husband to share profits and losses of the business. Petitioner's name was not on the business bank account and she could not draw checks thereon. The real property used in the business was in the name of petitioner's husband only. Petitioner did not have access to the books of the business, did not participate in the management thereof, was not named in suits brought in connection therewith, and received no distribution from profits. When in the latter part of 1949 petitioner asked her husband to recognize her as a partner in *58 the business, he refused to do so and has continued to refuse to so recognize her. Held: Petitioner was not a partner with her husband in the operation of the dancing school business and is not taxable during the years here involved on any portion of the profits thereof. Charles B. Honikel, Esq., 100 State Street, Albany, N. Y., for the petitioner. Colin C. Macdonald, Jr., Esq. and Edward H. Hance, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion *59 SCOTT, Judge: The respondent determined deficiencies in petitioner's income tax in the amounts of $3,573.15 and $1,688.56 for the taxable years 1948 and 1949, respectively. Respondent also determined additions to the tax for each of these years under sections 291(a), 294(d)(1)(A) and 294(d)(2) of the Internal Revenue Code of 1939, but at the trial of the case conceded the addition to the tax under section 294(d)(2) and on brief conceded the addition to the tax under sections 291(a) and 294(d)(1)(A). The deficiencies result from the inclusion by respondent in petitioner's income of one-half of the profits as determined by him of a business operated in Albany, New York, under the name of Arthur Murray Dance Studio. The primary issue for decision is: whether petitioner was engaged in business as a partner with her husband in the operation of the Arthur Murray Dance Studio of Albany, New York during the taxable years 1948 and 1949, thereby being taxable on one-half of the net profits of this business. If it is determined that petitioner was a partner in the dance studio business, the further issues are: whether payments made to Arthur Murray, Inc., in the amounts *60 of $4,172.74 and $2,993.24 in the taxable years 1948 and 1949, respectively, were properly disallowed by respondent in computing the profits of the dance studio business; and whether the Statute of Limitations barred assessment and collection of the deficiencies determined by respondent for the taxable years 1948 and 1949. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner is an individual now residing in San Diego, California. Petitioner did not file Federal income tax returns for the taxable years 1948 and 1949. On June 9, 1946, petitioner married Emil F. Roedel and lived with him as his wife during the taxable years 1948 and 1949 at 31-33 Elk Street, Albany, New York. Petitioner and Emil F. Roedel were separated in 1952 and divorced in October of 1955. By agreement, dated February 1, 1947, between Arthur Murray, Inc., of New York City, as licensor, and Emil Roedel and Gaynell Roedel (petitioner herein), as licensee, the licensor granted to the licensee the use of the Arthur Murray method and name in connection with a dancing school or schools to be conducted by licensee in the city of Albany, New York, the school to be conducted *61 under the name, Arthur Murray Dance Studio of Albany. This agreement was superseded by a similar agreement of September 1, 1948, between Arthur Murray, Inc., of New York City, as licensor, and Emil Roedel and Gaynell Roedel of 33 Elk Street, Albany, New York, as licensee, the latter license agreement continuing in effect until August 31, 1952. The operation of the dancing school under the name of Arthur Murray Dance Studio of Albany was commenced in 1947 on the first floor of properties located at 31-33 Elk Street, Albany, New York. The properties at 31-33 Elk Street were transferred in 1947 by a deed naming Emil Roedel only as the grantee of the properties. The purchase price of the properties was approximately $32,000. First and second mortgages were placed on the properties in approximately the amount of the purchase price thereof. These mortgages have been paid in full. The petitioner and Emil Roedel lived on the third floor of the Elk Street properties and rented apartments located on the second floor of these properties to others. During the years here involved petitioner, in addition to doing all of her own housework, assisted her husband in running the studio. She interviewed, *62 took care of publicity, and taught children's dancing classes. She would usually go to the studio about 2:00 o'clock in the afternoon, after having prepared breakfast and done the daily housework. Generally, she stayed in the studio until about 5:00 o'clock when she would go back to the third floor apartment, fix dinner, and complete the household chores. She would sometimes return to the studio about 6:30 or 6:45 p.m. The greater part of the business of the dance studio was conducted in the evenings. At the time the operation of the dance studio commenced, petitioner withdrew approximately $1,000 of her own funds from her account in the Immigrant Savings Bank in New York City and contributed this amount to the start of the business. Petitioner had no written or oral agreement with her husband to share in the profits or losses of the dancing school business. Her name did not appear in any way in connection with the business except on the license agreement with Arthur Murray, Inc. The bank account of the business was in the name of Emil Roedel and the books were maintained by him. He prepared and forwarded all reports which were made by the business to Arthur Murray, Inc., of New *63 York. Petitioner had no access to the books which were kept in a locked file in the dancing school office to which she had no key. Petitioner saw these books of account only once or twice during the years here involved. Petitioner's name was never on any of the bank accounts maintained in connection with the dancing school business and she had no right to sign checks on the business account. Emil Roedel managed the business and made all the decisions in connection with it. During the years here involved some legal actions were instituted by customers of the dance studio in connection with the operation of the dancing school against Emil Roedel only. Petitioner was never named in any of these actions. Petitioner's husband furnished her with money, either in checks or cash, for personal bills and small household bills, the total amounts so given to her during 1948 being approximately $300 and during 1949 approximately $700. Emil Roedel paid the major household expenses including the grocery and meat bills by monthly checks issued in payment of charge accounts. Petitioner was paid no salary for her work in the dance studio. Emil Roedel collected the rents on the apartments on the *64 second floor of the Elk Street properties. Petitioner trusted her husband in his management of the business and she never had any discussion with him concerning any of the profits of the dancing school business belonging to her or whether she was a partner in that business until about the end of the year 1949. About Christmas of 1949 petitioner asked her husband for the money to pay half the tuition of her son's college. He refused to give her the money, stating that he would not help another man's child through college. Petitioner told her husband that she thought that at least $600 was due her; she felt she had earned that much at least. When he still refused to give her the money she requested, petitioner asked her husband about her status as a partner in the dancing school business and he said there was never a partnership. After this discussion in December of 1949, the marital situation between petitioner and her husband progressively worsened. Petitioner attempted to have her husband agree to some partnership relation in the business but never obtained any such agreement from him. In 1952 upon the return of petitioner's husband from an Arthur Murray convention, the marital *65 difficulties became so strained that he told petitioner that if she did not get out he would throw her out. On May 2, 1952, petitioner instituted a suit against Emil Roedel in the New York Supreme Court, County of Albany, New York, in which she alleged that she and her husband entered into a joint venture and partnership agreement whereby they agreed to form a copartnership and pursuant thereto conduct a dance studio under the name and style of Arthur Murray of New York City at Albany, New York; that under the terms of said agreement petitioner and her husband were to share the partnership property, assets, income, and losses equally. In this suit petitioner alleged that the real property generally known as 33 Elk Street, Albany, New York was purchased for and on behalf of the partnership and paid for from the funds of the partnership. Petitioner further alleged that her husband had refused to pay her proportionate share of the partnership income to her and refused to make an accounting of the partnership. Emil Roedel denied all the allegations made by petitioner. The case was heard before a referee. At the conclusion of the petitioner's testimony in the case, petitioner's motion *66 to conform the pleadings to the proof was granted and petitioner was allowed to amend the allegation of her complaint by deleting the allegation that petitioner and her husband entered into a joint venture and partnership agreement and substituting instead the allegation "that from May 6, 1947 until March 4, 1952, plaintiff and defendant were co-partners carrying on the business of a dance studio under the name and style of 'Arthur Murray of New York City' at Albany, New York." At the time the motion was made, petitioner's counsel admitted that petitioner had been unable to prove that any partnership agreement existed. Petitioner has never received any money or judgment in her favor in the suit she commenced in the New York State Court. Pursuant to the terms of the license agreements, the licensee was required to transmit to the licensor 5 per cent of the gross weekly receipts of the dance studio to be held by the licensor in escrow. The purpose of this account was to protect and indemnify Arthur Murray, Inc., from any claims arising out of the operation of the Albany dance studio, to provide a fund for refunds for unused lessons for which payment had been made to the licensee, and *67 for reimbursing Arthur Murray, Inc., and other licensees for redeeming unused lessons for which payment had been made to the licensee named in the license agreement. These funds were to be held separate and apart from all other funds of the licensor on deposit in any bank in New York City or could be invested by licensor in any bond, indenture, or note deemed safe by licensor, in which case the income earned therefrom was to be credited to the licensee's account. When a total of $15,000 was deposited in the account, no further payments were required to be made to the licensee's escrow fund unless the account was depleted by payments made therefrom in accordance with the agreement whereupon payments would resume until the fund again amounted to $15,000. Upon termination of the license agreement or upon renewal or extension thereof or upon permanent discontinuance of the licensee's dance studio, Arthur Murray, Inc., was to account to the licensee within 14 months of such happening and to pay over these funds less all debts and obligations due under the license agreement and less the amount of $2 per hour of dance instruction paid for by licensee's pupils remaining untaught at that time. *68 Under this agreement there was deposited with Arthur Murray, Inc., the sum of $4,172.74 in the taxable year 1948 and $2,993.24 in the taxable year 1949. No payments were made from the account during those years. Emil Roedel filed individual Federal income tax returns for the taxable years 1948 and 1949 with the collector of internal revenue for the fourteenth district of New York, purporting to report the entire income of the dance studio business. These returns were audited by the Internal Revenue Service and adjustments increasing net taxable income in each year were made. The entire net profits of the dance studio business were included in the income of Emil Roedel in the determination of the deficiencies resulting from this audit. On November 5, 1952, Emil Roedel executed a waiver of restrictions on assessment and collection of deficiency in tax (Form 870) agreeing to the deficiencies resulting from the adjustments made in the audit of his returns. The adjusted gross income determined by respondent in the statutory notice, issued to petitioner, in the amount of $14,688.68 for the taxable year 1948 and $9,038.47 for the taxable year 1949 was computed by allocating as petitioner's *69 distributive share of the partnership venture a sum equal to one-half of the net income determined in the Internal Revenue Service audit to be the net income of Emil Roedel for each such taxable year. On June 7, 1957, the district director of internal revenue, Albany, New York, made jeopardy assessments against the petitioner of the income tax and additions to the tax as determined by respondent and interest thereon. The notice of deficiency herein was mailed to petitioner on June 12, 1957. Petitioner was not a partner with her husband in the operation of the dancing school business during the years 1948 and 1949 and is not taxable in either of these years on any portion of the profits of that business. Opinion Even though petitioner received nothing from the business of operating the dance studio during the years 1948 and 1949, it is nontheless clear under the controlling statutes [1] that if she was in fact a partner with her husband in this business she is taxable upon her distributive share of the profits of the business to be determined in accordance with the provisions of the partnership agreement. Stoumen v. Commissioner, 208 F. 2d 903 (C.A. 3, 1953), affirming *70 a Memorandum Opinion of this Court; Frederick S. Klein, 25 T.C. 1045 (1956). It is, therefore, necessary to determine whether, for the purpose of determining Federal income taxes, petitioner was in fact a partner with her husband in the operation of the dance studio business, and, if so, what was her distributive share of the profits of that business under the partnership agreement.
*71 The Supreme Court, in Commissioner v. Culbertson, 337 U.S. 733, 742, where the issue involved was the bona fide existence of a family partnership, laid down the general test for determining the validity of such partnerships for income tax purposes as follows: The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. The Culbertson case involved the taxpayer's contest of the Commissioner's denial of the bona fide existence of a family partnership, but the principles therein announced are equally applicable here where the petitioner challenges *72 the Commissioner's determination that a partnership did exist between her husband and herself. Cf. Mamie Tindall, 14 T.C. 1120 (1950). Having considered all the facts of record herein, we have concluded that under the principles set forth in the Culbertson case these facts establish that no partnership existed between petitioner and her husband in the years 1948 and 1949. There was no written or oral partnership agreement and the relationship was not such that an implied agreement existed. While petitioner did make a small capital contribution and did render some services to the business, there had been no discussion of compensation for her services or the existence of a partnership until this subject was brought up by petitioner about the end of 1949. When in the latter part of 1949 petitioner asked her husband for $600 to use to pay college tuition for her son, she was asking her husband for this amount as his wife, not as an employee seeking compensation or a partner asking for a distributive share of profits. It was only upon the refusal of petitioner's husband to give her the $600 which she requested that petitioner told him that she thought she had earned at least *73 that amount and it was upon his persistent refusal to give her the money that she asked that petitioner attempted to have her husband recognize her as a partner in the dance studio business. Emil Roedel denied that any partnership existed and has continued to deny the existence of any partnership. Petitioner and her husband never had any mutual understanding concerning the sharing of profits and losses of the business, and the management and control thereof was entirely in petitioner's husband. No agreement existed as to compensation to petitioner for services or as to a return on her capital contribution of approximately $1,000 which might indicate any implied partnership agreement. The only business record on which petitioner's name appeared was the licensing agreement from Arthur Murray, Inc., of New York. The record as a whole shows that there was no agreement, express or implied, between petitioner and her husband to operate the dance studio business as a partnership and absent some such agreement or understanding no partnership exists. L. C. Olinger, 10 T.C. 423 (1948). We have not ignored the fact that petitioner, in her complaint filed in the New York Supreme *74 Court, County of Albany, alleged that there was a partnership agreement and in her counsel's opinion having failed to prove such an agreement continued to contend that there existed a copartnership between her husband and herself. So far as the record herein shows, this suit is still pending undecided. However, it is not determinative of the issue here involved whether some rights might exist in petitioner under the laws of New York State to recover some moneys from her former husband on some theory of copartnership since under the tests applicable for Federal income tax purposes no such partnership has been shown to exist. Since we have held that petitioner is not taxable on any portion of the profits of the dancing school business, the remaining issues become moot. Decision will be entered for petitioner. Footnotes
1. I.R.C. 1939
SEC. 181. PARTNERSHIP NOT TAXABLE. Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. SEC. 182. TAX OF PARTNERS. In computing the net income of each partner, he shall include, whether or not distribution is made to him - * * *
SEC. 182. (c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b). SEC. 183. COMPUTATION OF PARTNERSHIP INCOME. (a) General Rule - The net income of the partnership shall be computed in the same manner and on the same basis as in the case of an individual, except as provided in subsections (b), (c), and (d). SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * *
(2) Partnership and Partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. * * *↩