## FUNAI v. COMMISSIONER OF INTERNAL REVENUE.

No. 6076.

United States Court of Appeals Fourth Circuit.

Argued April 13, 1950.

Decided May 19, 1950.

Robert J. Heberle, Richmond, Va., for petitioner.

I. Henry Kutz, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General, and Ellis N. Slack, Special Assistant to the Attorney General, on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and HAYES, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a decision of the Tax Court of the United States sustaining a deficiency assessment levied by the Commissioner of Internal Revenue against H. V. Funai. Deficiencies were assessed as follows:

| Year | Amount |
|------|--------|
| 1943 | $2,675.51 |
| 1944 | 2,695.56 |
| 1945 | 216.30 |

The Commissioner determined that income reported on partnership returns by H. V. Funai for the taxable years involved as income of a partnership existing between him and his wife, Viola Funai, was in fact the taxpayer's income alone. Thus the only question before us is whether or not, for tax purposes, Viola Funai was a member of an alleged family partnership. The facts are not disputed.

Taxpayer and Viola Funai are residents of the City of Richmond, Virginia. They were married in 1930 and have three children, one born in 1931, another in 1936,

and a third in 1944. In 1931 taxpayer formed a partnership with one Bannister to conduct a chicken business at which time taxpayer contributed capital, part of which came from the savings of Viola, in the total amount of $325. This partnership dissolved in 1933 and all of the capital contributions of both partners, except $50 in cash and a truck which Bannister received, were dissipated. Taxpayer, however, continued to operate under the name of Marshall Poultry Company and his wife assisted him in the operation of the business.

*Funai and his wife worked for long hours. The store was open for seventeen hours on Saturday and eleven hours for the other week days.* In 1934 a grocery department was opened over which Viola took supervision She purchased 95% of the groceries, priced the merchandise, prepared advertising circulars, kept such books and records as were kept and until 1939 she received no salary but took from the cash register such funds as she needed personally. Taxpayer, in the meantime, operated the poultry department and had little to do with the grocery division.

Prior to 1940 the income from the business was reported and taxed as that of taxpayer. Some time in 1939 taxpayer agreed with one Louis J. Whitehead, who was then one of his employees, to sell to Whitehead a one-third interest in the business and accordingly, in January, 1940, an inventory of the business was taken which showed physical assets amounting to $15,-624.89. The bulk of this inventory was represented by groceries, bought and paid for by Mrs. Funai. Some time in May an agreement was entered into between H. V. Funai and Viola C. Funai as parties of the first part and L. J. Whitehead as party of the second part whereby the parties of the first part sold to Whitehead a one-third interest in the Marshall Poultry Company for $5,208.93, $500 of the consideration being paid in cash and the remainder to be paid out of the earnings of the business. This agreement was to be effective as of January 1, 1940. It contained a provision allowing the parties to the contract to have a drawing account to be arranged by

agreement and then provided: "That such net profits as may exist after the payment of expenses and the aforementioned drawing accounts shall be divided between the parties to this contract in proportion to their respective holdings; that is to say— 2/3rds to the parties of the first part and 1/3rd to the party of the second part; but it is further agreed that the parties of the first part shall be the sole judges of when said division shall be made. * * * It is further mutually agreed that H. V. Funai is to have complete control of the operation of said business."

In the latter part of 1940, after the agreement with Whitehead had been in existence for almost a year, H. V. Funai was preparing to fill out his income tax return for 1940 when a field examiner from the Revenue Department inspected his 1939 return. The inspector informed him that if he made out partnership returns for himself and his wife he would probably save some income tax. This he accordingly did.

A business bank account was kept at the Southern Bank & Trust Company in the name of Marshall Poultry Company. Both taxpayer and his wife were authorized to draw checks on this account. In 1937 when moneys had accumulated in excess of the needs of the business, a joint account was created at the Morris Plan Bank. Later on, as the accumulations grew, three savings accounts were created at the First Federal Savings and Loan, one in H. V. Funai's name, one in Viola's name, and one in the joint names of both. The purpose of these separate accounts was to keep the deposits at less than $5,000 in order to procure the benefit of federal insurance.

There were no capital accounts set up on the books showing the various interests of the parties. Profits were divided when H. V. Funai decided that there was more money in the business account than was needed for operating purposes, and dividend checks were issued.

On December 18, 1940, Viola received such a check for $300. It was endorsed by her and stamped "Deposit to the credit of H. V. Funai." On December 31, 1940, she received a check for $500, which was en-

dorsed by her and under the endorsement was written "Credit to account of H. V. Funai." On February 4, 1941, she received a check for $300, endorsed by her in blank and cashed at the Morris Plan Bank.

During the year 1940 Viola worked on a full time basis of not less than five days a week. She hired some of the employees, purchased most of the groceries, kept some of the accounts, waited on the public, and took care of the cash. During that year H. V. Funai, Viola Funai and Whitehead each drew a salary of $30 a week for services rendered to Marshall Poultry Company.

Taxpayer filed a "partnership return of income" in the name of Marshall Poultry Company for the year 1940. In 1940 a notice of assessment was issued by the City of Richmond to H. V. Funai, Mrs. H. V. Funai and Louis J. Whitehead, trading as Marshall Poultry Company, for a retail business license. Similar licenses were procured for the year 1941. During 1941 Viola worked on an average of 4½ days a week and the three individuals continued to draw their respective salaries of $30 a week. There is no testimony as to the amount of profits that were distributed at that time although a partnership income tax return was filed for 1941.

In November, 1942, it was decided to abandon the grocery division of the business and concentrate on the poultry branch. This reduced the amount of work for taxpayer and his wife and their hours grew less. At the same time a new agreement was entered into between H. V. Funai and Viola Funai as parties of the first part, and L. J. Whitehead and Rhea Whitehead, parties of the second part, whereby the first parties conveyed to the second parties an additional 16⅔ percent interest in Marshall Poultry Company. By this agreement the profits of the business were to be divided one-half to the parties of the first part and one-half to the parties of the second part. It was also agreed that "H. V. Funai is to have complete control of the operations of the business." Whitehead paid to H. V. Funai $1,889.70 for the increased capital interest in the partnership. The new agreement was to take effect as of January 1, 1943.

After the liquidation of the grocery business and up to January 1, 1943, Viola sold poultry, took in cash, wrapped packages, swept the floors, and did other odd jobs. There is no testimony as to the amount of time she devoted to the business during the latter part of 1942. A partnership return of income was filed for the year 1942.

During 1943 Viola's connection with the business was to assist in the sales of poultry. She worked three days a week, Tuesday, Friday and Saturday, and because of the approaching birth of their third child she was away from the store much of the time in the latter part of the year. Between 70 and 80% of all business was done on Fridays and Saturdays. In 1944 Viola was at the store very little as the child was born in that year; but taxpayer himself only worked two days a week in 1944. During 1943 and 1944 the parties continued to draw their salaries of $30 a week. Viola Funai did not invest, during the years 1942 to 1945, inclusive, any capital originating with her in the Marshall Poultry Company.

On January 6, 1945, H. V. Funai sold certain fixtures formerly used by the Marshall Poultry Company to Albert L. Williams for $3,941.96. He also sold to Williams a cash register for $250 and a Ford truck for $500.

On March 6, 1945, H. V. Funai, party of the first part, as vendor, and A. L. Williams, party of the second part, as vendee, entered into an agreement as follows:

"That for the sum of money and consideration hereinafter mentioned, the said Vendor does hereby sell and the said Vendee does hereby purchase the name (trade) 'Marshall Poultry Company' which has been heretofore used as the name of a certain poultry business located at 418 East Marshall Street, Richmond, Virginia, by the Vendor.

"The said Vendor does hereby covenant and agree that he had the right to sell to the said Vendee the above-mentioned name.

"The consideration for the sale and purchase of the subject of this contract is the sum of One Thousand ($1,000) Dollars, * * *."

The money received by H. V. Funai, from the sale of the fixtures formerly used by the Marshall Poultry Company, to Albert Williams in 1945, was divided equally between H. V. Funai and Louis Whitehead.

The taxpayer on his individual income tax return for the taxable year 1945, reported the sale of a one-half interest in a partnership in the sum of $2,050 and a half interest in the trade name in the sum of $500. The individual income tax returns in the name of Viola Funai for the taxable years 1942, 1943 and 1944 do not reflect any income resulting from the ownership by her of real estate or other property.

H. V. Funai testified that he did not know in which account his half of the proceeds from the sale of the fixtures formerly used by the Marshall Poultry Company were deposited nor for what purpose they were used.

The partnership returns for 1940 and 1941 show the partnership income divided one-third to taxpayer, one-third to Viola and one-third to Whitehead. The 1942 partnership return shows taxpayer and Viola as receiving each 32%, and the two Whiteheads each receiving 18%. The returns for 1943 and 1944 show each party receiving 25% of the income. Taxpayer and his wife filed a joint income tax return for 1945.

■ In Commissioner v. Culbertson, 337 U.S. 733, at pages 741 to 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659, the Supreme Court of the United States, referring to its prior decision in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, said:

"We there said that the question whether the family partnership is real for income-tax purposes depends upon 'whether the partners really and truly intended to join together for the purpose of carrying on the business and sharing in the profits and losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their "agreement, considered as a whole, and by their conduct in execution of its provisions." Drennen v. London Assurance Co., 113 U.S. 51, 56, 5 S.Ct. 341, 344, 28 L.Ed. 919; Cox v. Hickman, 8 H.L. Cas. 268. We see no reason why this general rule should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes.' 327 U.S. at page 287, 66 S.Ct. at page 536, 90 L.Ed. 670, 164 A.L.R. 1135.

"The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

In the Tower case, supra, the Supreme Court stated, 327 U.S. 290, 66 S.Ct. 537, 90 L.Ed. 670, 164 A.L.R. 1135: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182, 26 U.S.C.A.Int.Rev.Code, §§ 181, 182."

Questions concerning the validity, for tax purposes, of alleged family partnerships, have frequently been before this, and other, Courts. Thus in Mauldin v. Commissioner, 4 Cir., 155 F.2d 666, 668, we said: "In summary, this case merely represents another in the stream of cases now coming before the courts wherein taxpay-

ers have sought by various types of re-allocation of income within the family group to retain the enjoyment of a large income without the normally incident tax consequences. This Court recently passed upon another such device which we found to be equally unavailing. Hash v. Commissioner, 4 Cir., 152 F.2d 722. We do not mean that all reallocations of income within a family group are to be set aside for tax purposes. But such arrangements, to be recognized, must have a reality and substance which is not found in the instant case."

A survey of all the facts in the instant case convinces us that H. V. Funai and Viola Funai actually intended that a partnership relation exist between them and that the decision of the Tax Court to the effect that Viola was not a partner, for tax purposes, is clearly erroneous.

Although the Tax Court found that "Viola had worked conscientiously and for long hours in the management of the grocery and in the supervision of employees" and that "her services were vital to the business enterprise and above those of a salaried employee," it then proceeded to the totally unjustifiable assumption that "Viola performed her activities in the promotion of her duties as a wife and her interest in increasing the family income," and rendered "no service to the business except to perform her duty as a helpful wife and to advance her family welfare." As was indicated in our previous quotation from the Tower case, supra, services such as those performed by Viola are strong evidence of the existence of a family partnership. Without these services of Viola, the business could hardly have been carried on.

■ The Tax Court, as a basis for its decision, stated that "the evidence that Viola Funai ever received under her own dominion and control any of the funds arising from the alleged partnership business * * * is purely negligible." The Tax Court made this assumption in spite of the fact that the only legitimate conclusion to be drawn from the facts as found by the

Tax Court was that Viola had the right to draw on all bank accounts except the $5,-000 savings account in the taxpayer's name. She, in her turn, had a $5,000 savings account on which the taxpayer could not draw. There is no rule of law which requires the recipient of money to spend it before it can be classified as income. The right to control funds, and not the exercise of that right, is the vital factor here. As was started in Helvering v. Horst, 311 U.S. 112, 118, 61 S.Ct. 144, 147, 85 L.Ed. 75, 131 A.L.R. 655: "The power to dispose of income is the equivalent of ownership of it." Furthermore, in the instant case we have the additional circumstance that real estate was purchased with these joint funds in the name of both husband and wife.

■ The Tax Court makes much of the fact that no partnership return was filed prior to 1940. We quote again from the opinion of the Tax Court: "Certainly her husband had no idea of a partnership relationship between him and his wife as he filed individual income tax returns and did not hold his individual proprietorship out to the public as a partnership. In fact, even after the agreement entered into with Whitehead in May of 1940 the petitioner had no idea of filing partnership returns as between him and Viola until he was advised to do so by a representative of the Internal Revenue Department." No man, however, is required to know all the legal consequences of his every act, and we are not prepared to say that, on the basis of failure to file such partnership returns, no partnership in fact existed prior to 1940. Certainly when the partnership agreement was drawn up with Whitehead, effective January 1, 1940, a real partnership relation existed between husband and wife. We are not impressed by the statement of the Tax Court that: " * * * the agreement with Whitehead does not indicate an intent by the Funais to establish a partnership relationship between themselves. The agreement provided that H. V. Funai and Viola Funai, parties of the first part, jointly owned two-thirds of the business and L. J. Whitehead owned the other one-third.

There is no statement in said agreement that Viola Funai in her individual capacity has any interest in the partnership * * *." Clearly, it would have been more desirable for the partnership agreement to state specifically that Viola Funai was a partner; but the agreement was evidently drawn up by persons with little education and without legal counsel. It is conceded by the Tax Court that H. V. Funai and Whitehead were partners. The language of the agreement leads reasonably to the conclusion that it purported to establish a partnership, not merely between H. V. Funai and Whitehead, but between H. V. Funai, Viola Funai and Whitehead. H. V. Funai was designated as "having complete control of the operation of said business" in both the agreements of 1940 and 1943. This made him the managing partner but did not preclude either Whitehead or Viola from being members of the partnership.

The Tax Court speculates at length as to the division of income between the Whiteheads and the Funais although no such question was raised by the parties. Suffice it to point out that the Commissioner examined the partnership returns, found them in order, and the only issue raised here is with respect to the taxing of Viola's share of the income to the taxpayer.

The Tax Court attaches significance to the fact that the taxpayer, on his return for 1945, reported the sale of a one-half interest in the business and name of Marshall Poultry Company, and that Viola, on her separate returns for 1942, 1943 and 1944, did not report any joint rental income. The taxpayer filed a joint return in 1945 and correctly reported thereon the sale of both the taxpayer's interest and that of his wife. Had he reported the sale of less than a one-half interest on a joint return, the return would have been erroneous. The separate returns of Viola for 1942, 1943 and 1944 were not required to include joint rental income reported on the taxpayer's returns. Common and approved practice in those years permitted such division of joint income and exemptions as the taxpayer chose. Viola chose to report her separate partnership income. Taxpayer chose to report their joint rental

income. It is not for the Tax Court to speculate on that choice in disregard of the facts.

 Some of the capital which went into the original business originated with Viola. She worked long hours, contributing vital services, hired employees, made purchases and sales and looked after the cash. She had with her husband equal rights of control over the profits of the business and she was held out to the public as a partner. Written partnership agreements were entered into, partnership income tax returns were filed from 1940 through 1944 and accepted by the Commissioner until 1942, and business licenses were taken out, including Viola as a party. Viewing the totality of the facts, we find no sham or lack of economic reality in this partnership between husband and wife but, on the contrary, a bona fide intent, actually effected, on the part of both husband and wife, to join together for the purpose of carrying on the business as a partnership, with the attendant consequence of sharing the profits and losses. The decision of the Tax Court is reversed.

Reversed.