**L. C. GIFFORD and Mildred J. Gifford, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 192.**

United States District Court, W. D. North Carolina, Statesville Division.

Oct. 1, 1954.

John C. Reid, Washington, D. C., Thomas P. Pruitt, Hickory, N. C., for plaintiffs.

James M. Baley, Jr., U. S. Atty., Asheville, N. C., Fate J. Beal, Asst. U. S. Atty., Lenoir, for defendant.

WARLICK, District Judge.

This action was brought by the plaintiffs against the defendant for refund of income taxes allegedly paid for the years 1944, 1945, 1946, 1947 and 1948. L. C. Gifford filed claims for such refunds for the years above with the exception of 1948, seeking an aggregate amount of $58,548.81. L. C. Gifford and Mildred J. Gifford filed for a claimed refund for the year 1948 in the amount of $12,422.38. These refunds sought in both instances were within the statutory time, and prior to the institution of this action the Commissioner of Internal Revenue had not acted. The action concerns income taxes on earned amounts from a partnership. The one and only issue involved is whether the plaintiffs are to be taxed with the entire income of the partnership known as "Gifford Publishing Company," for the years involved. The question may be stated in a different way,—are the partnership interests of Suzanne Gifford and Sara Lee Gifford in the Gifford Publishing Company to be recognized for income tax purposes?

The cause was heard on the pleadings, stipulations, exhibits and the testimony of two witnesses. The facts are not greatly in dispute.

Plaintiffs L. C. and Mildred J. Gifford are husband and wife. Sometime during the year 1929 they became residents and citizens of Hickory in Catawba County, North Carolina, in the Western District. There were two children born to their marriage, Suzanne and Sara Lee Gifford. They came from the State of Indiana. During the greater part of their adult life prior to coming to North Carolina and all through the years since coming to Hickory they have been engaged in the publication of several different daily newspapers, both being trained in that particular field, and were not only experienced but were capable and able publishers of said newspapers, having edited two daily papers in Indiana. Prior to coming to Hickory the plaintiffs had acquired the controlling interest in the Hickory Record, Inc., which published the Hickory Daily Record, through the purchase of common stock of that corporation from the surviving members of the Miller family who had organized it in 1915, and who had successfully conducted it through that period. Plaintiffs did not purchase the outstanding preferred stock which was principally held by the original incorporators living in and around the City of Hickory, largely being the employees of said company who owned $10,000 of the preferred stock.

Upon securing control of the corporate affairs through the purchase of its common stock by the plaintiffs, L. C. Gifford was elected secretary and treasurer and business manager of the corporation.

The two Gifford children were girls and when not in school were in and about the newspaper plant with their parents who were engaged in its operation, and early learned the characteristics and ideas of newspaper editing and publishing.

On October 10, 1936, L. C. Gifford made gifts of 100 shares of common stock of the Hickory Record, Inc., to each of his two daughters, Suzanne and Sara Lee Gifford, and complied fully with the law then in force with respect to gifts to members of one's family. His purpose in effecting these gifts was to divide the controlling ownership of the newspaper among the members of the family. Subsequently on March 1, 1937, Suzanne and Sara Lee Gifford each received 50 shares of said common stock in exchange for notes in the amount of

$5,000 each which they had received as dividends in 1936, on the stock then owned by them. Mildred J. Gifford was the owner of 150 shares of said common stock and had been since the purchase of the controlling interest in said corporation had come about.

Therefore on July 1, 1940, the stock books of the Hickory Record, Inc. reflected the following ownership:

| Name | Number of Shares | Par Value |
|------|------------------|-----------|
| L. C. Gifford | 11 | $ 1,100 |
| Mildred J. Gifford | 150 | 15,000 |
| Suzanne Gifford | 150 | 15,000 |
| Sara Lee Gifford | 150 | 15,000 |
| Others | 3 | 300 |
| Total | 464 | $46,400 |

On June 29, 1940, a partnership agreement was entered into by the plaintiffs herein and the two daughters, Suzanne and Sara Lee Gifford, creating a partnership known as Gifford Publishing Company,—its prime intent and business purpose being the publishing of the Hickory Daily Record. Certain of the material factors embraced in said partnership agreement are incorporated herein and made a part of these findings of fact.

"Whereas the Senior Partner and the Junior Partners have leased from Hickory Record, Incorporated, the building and certain other properties now used in the publication of the Hickory Daily Record, and desire to use the same and continue the publication of the Hickory Daily Record as partners:

"Now, therefore, the interest of said partners in said business is as follows: Lester C. Gifford, Senior Partner,—30%; Mildred J. Gifford, Junior Partner—30%; Suzanne Gifford, Junior Partner—20%; and Sara Lee Gifford, Junior Partner,— 20%.

"The Senior Partner shall be the Managing Partner and shall also have direct control and supervision over the business and editorial policies of the Hickory Daily Record, and direct control and supervision over the employment of correspondents, news reporters and all other agents, servants and employees.

"The salaries of the partners shall be subject to change from time to time and at or near the close of any year in accordance with the ability, energy and value of service shown and rendered by the various partners, and in accordance with the earnings of the partnership. Until so changed, such salaries shall be as follows: Senior partner—$7,000 per year; Mildred J. Gifford, Junior Partner—$3,000 per year; Suzanne Gifford and Sara Lee Gifford, Junior Partners, each $100 per month for each month that each devotes to the business of the partnership.

"Each Junior Partner agrees that she will not withdraw from the firm assets any part of her share of the principal; and each Junior Partner agrees not to withdraw from the firm business any part of her profits thereof, without the consent of the Senior Partner.

"Upon the death of any partner, the surviving partners shall have the right to purchase the interest of the deceased partner at the appraised value reached by appraisers selected as herein stated. The Senior Partner, or his legal representative shall select two appraisers, and the Junior Partners, or their legal representatives, shall select two appraisers and these four shall agree, if possible in good conscience, on the value of the interest of the deceased

partner; and such agreed value shall be binding and conclusive on all parties hereto or claiming hereunder. But if these four are unable to agree on the value of such interest, they shall then select a fifth appraiser and then the decision of any three of the appraisers shall be binding and conclusive on all parties hereto or claiming hereunder. After the death of any partner and before any purchase by the surviving partners of the interest of the deceased partner, the firm business shall be operated by the surviving partners until there is an opportunity for the surviving partners to purchase the interest of the deceased partner. If the surviving partners do not desire to purchase the interest of the deceased partner, they shall have the right to continue to operate the firm business so long as it shows a profit; and accurate records shall be kept and frequent audits made to ascertain whether a profit is-being made. In this event, subject to the rights of the Senior Partner as hereinabove stated, the profits of the deceased partner shall be paid to his or her legal representative or representatives in semiannual installments."

In bringing about this partnership agreement the first thought of those constituting said partnership was a dissolution of the Hickory Record, Inc., but since the Miller family and others who held the preferred stock and a small portion of the common stock were deeply rooted in the economic affairs of Hickory and its surrounding territory, it was determined that the corporation would continue and would hold title to the newspaper business and the equipment and would lease such together with other corporate properties to the Gifford Publishing Company, at an agreed rental of $6,000 a year. Certain corporate assets such as accounts receivable, inventories, supplies, etc., were transferred to the Gifford Publishing Company at book value and were paid for on March 3, 1941. Circulation lists, subscriptions, good will and other factors of that type and character were made to the partnership and the Gifford Publishing Company has continuously published the Hickory Daily Record until this time. It ranks high among the afternoon newspapers in North Carolina.

The four partners of the Gifford Publishing Company made the following investments in said partnership:

| | |
|---|---|
| L. C. Gifford | $1,981.34 |
| Mildred J. Gifford | 748.37 |
| Suzanne Gifford | 1,497.92 |
| Sara Lee Gifford | 896.17 |
| Total | $5,123.80 |

which were from funds received from the Hickory Record, Inc., on July 1, 1940, representing the amount of notes payable and individual personal accounts.

The evidence heard warrants a finding that the division of partnership interest was determined upon the basis of experience, in newspaper publication and additionally upon a fair return of each partner contribution to the operation and management of the partnership affairs. Shares in the partnership allotted to Suzanne and Sara Lee Gifford were accounted for upon the basis of ownership of stock in the Hickory Record, Inc., as well as the proposed service that each would render to the partnership.

At that time Suzanne was 22 years of age, had graduated from Lenoir Rhyne College following her study at Agnes Scott and was taking post graduate work at Indiana University. Upon completion of her post graduate work she devoted her full time to the partnership, being advertising manager of said newspaper, and continued as such active partner until she married, either in late 1945 or early 1946. Upon her husband's recuperation from severe injuries received in combat, and his discharge, she moved with him to Statesville, North Carolina, where they now live.

Sara Lee was 18 years of age at the time of the partnership's formation. She

attended Lenoir Rhyne College and subsequently graduated at Converse in South Carolina. She attended the University of North Carolina for post graduate work, studying journalism, and following her degree in that field, taught school for three years. She was her father's daughter in every respect and taught school for that period on his advice and for that he had done likewise and seemingly had been well prepared for newspaper work. While teaching school she was very active in the formation of a newspaper in Elizabeth City where she taught, and during the same time wrote a great number of editorials for the Hickory Daily Record. These were published. She came to the paper on a full time basis in 1948, and while enroute to the Carolina-Wake Forest game in November 1949, was killed in an automobile accident. At that time she was assistant advertising manager. Following her death and in the fall of 1949, L. C. Gifford, administrator of her estate, filed an estate tax return reporting thereon as one of Sara Lee Gifford's assets and subject to such estate tax, her interest in the Gifford Publishing Company, at its book value of $52,500. This amount was not accepted by the Treasury Department and a deficiency in estate tax based on the valuation of this partnership interest was set up and the valuation of $80,000 was determined,— tax on this deficiency amounting to $7,095.98 was paid.

From the time of the formation of the partnership based on its fiscal year ending June 30, and up to and including 1949, when Sara Lee Gifford was killed, the foregoing salaries were paid:

| Fiscal year Ended 6/30 | L. C. Gifford | Mildred J. Gifford | Sara Lee Gifford | Suzanne Gifford |
|---|---|---|---|---|
| 1941 | $7,000 | $3,000 | $ 5.25 | $ 400.00 |
| 1942 | 7,000 | 3,000 | — | 1,207.50 |
| 1943 | 7,000 | 3,000 | — | 1,210.23 |
| 1944 | 7,000 | 3,000 | 16.20 | 1,300.07 |
| 1945 | 7,000 | 3,000 | — | 393.71 |
| 1946 | 7,000 | 3,000 | 30.00 | — |
| 1947 | 7,000 | 3,000 | 33.00 | — |
| 1948 | 7,000 | 3,000 | 105.00 | — |
| 1949 | 7,000 | 3,000 | 1,950.55 | — |

During that same period cash distributions not including salaries were made to Suzanne and Sara Lee Gifford in the following amounts:

| Fiscal Year Ended 6/30 | Suzanne Gifford | Sara Lee Gifford |
|---|---|---|
| 1941 | $ 179.05 | $ — |
| 1942 | 4,036.10 | 4,771.10 |
| 1943 | 614.84 | 1,575.00 |
| 1944 | 2,935.96 | 3,052.14 |
| 1945 | 8,294.37 | 5,685.88 |
| 1946 | 2,200.00 | 2,704.40 |
| 1947 | 1,625.00 | 2,268.38 |
| 1948 | 2,896.96 | 4,508.09 |
| 1949 | 4,008.58 | 3,298.57 |

During the war years people became avid readers and apparently with salaries and wages rising and money becoming more plentiful, newspaper publishing became profitable and in order to provide for needed repairs and to entrench against depression and war and other factors involved in the publish-

ing of a newspaper, Gifford Publishing Company set up what, for lack of a better name, is called an investment account, and for the record is as follows:

| As of 6/30 | L. C. Gifford | Mildred J. | Sara Lee | Suzanne |
|---|---|---|---|---|
| 1941 | $ 6,565.39 | $ 5,782.87 | $ 4,252.49 | $ 4,673.20 |
| 1942 | 4,845.60 | 7,168.86 | 1,981.50 | 3,497.61 |
| 1943 | 13,111.05 | 15,963.70 | 6,936.39 | 9,612.09 |
| 1944 | 23,031.47 | 24,160.62 | 13,716.86 | 16,508.74 |
| 1945 | 26,466.22 | 26,805.81 | 18,141.15 | 18,324.54 |
| 1946 | 31,118.28 | 32,979.45 | 23,718.32 | 24,406.11 |
| 1947 | 42,159.74 | 41,802.49 | 34,303.61 | 35,634.48 |
| 1948 | 51,824.82 | 50,883.17 | 40,669.19 | 43,611.19 |
| 1949 | 59,670.08 | 59,855.52 | 49,201.62 | 51,433.61 |

In this account was placed the distributive share of partnership profits of Suzanne and Sara Lee Gifford and drawing accounts were maintained for each of them. Both made withdrawals by check for personal and business purposes, and during the years from the formation of the partnership up to and including 1949, the year of Sara Lee Gifford's death, the following bank deposits were made in the First National Bank of Catawba County at Hickory:

| Year | Sara Lee Gifford | Suzanne Gifford |
|---|---|---|
| 1941 | $ 700.00 | $1,427.51 |
| 1942 | 1,510.00 | 980.00 |
| 1943 | 2,256.30 | 2,450.00 |
| 1944 | 3,059.55 | 3,407.83 |
| 1945 | 5,635.75 | 4,700.62 |
| 1946 | 3,165.69 | 1,700.00 |
| 1947 | 3,121.83 | 1,781.62 |
| 1948 | 4,608.28 | 4,927.38 |
| 1949 | 3,430.57 | 2,411.95 |

During the five years involved in this lawsuit the Gifford Publishing Company filed partnership income tax returns on the fiscal year basis ending June 30, of each year, which indicated the net income before the deduction of salaries to the four partners in the following amounts:

| Year Ended | Net Income |
|---|---|
| 6/30/44 | $61,976.30 |
| 6/30/45 | 63,736.93 |
| 6/30/46 | 54,097.86 |
| 6/30/47 | 62,641.36 |
| 6/30/48 | 70,244.37 |

This net income appears on the partnership returns as being distributed to the four partners in the following amounts:

| Year | L. C. Gifford | M. J. Gifford | Suzanne Gifford | Sara Lee Gifford |
|---|---|---|---|---|
| 6/30/44 | $22,198.01 | $18,198.00 | $11,432.08 | $10,148.21 |
| 6/30/45 | 23,002.97 | 19,002.97 | 11,062.35 | 10,668.64 |
| 6/30/46 | 20,220.36 | 16,220.36 | 8,813.57 | 8,843.57 |
| 6/30/47 | 22,782.51 | 18,782.51 | 10,521.67 | 10,554.67 |
| 6/30/48 | 25,041.82 | 21,041.81 | 12,027.87 | 12,132.87 |

The plaintiffs L. C. Gifford and Mildred J. Gifford together with their two daughters, Suzanne Gifford and Sara Lee Gifford filed income tax returns for the years involved and among other things as taxable to them, the income received from Gifford Publishing Company and as shown on its returns and paid the requisite tax thereon. Suzanne Gifford and Sara Lee Gifford paid income tax arising from their partner-

ship properties in the Gifford Publishing Company and not including the individual salaries during the years in question in the following amounts:

| | 1944 | 1945 | 1946 | 1947 | 1948 |
|---|---|---|---|---|---|
| Suzanne Gifford | $2,963.02 | $2,576.98 | $1,379.35 | $2,080.57 | $2,081.73 |
| Sara Lee Gifford | 2,887.92 | 2,941.41 | 1,971.39 | 2,516.29 | 2,237.71 |

During the years of 1945, 1946 and 1948 Suzanne Gifford, under her married name of Suzanne Gifford Milholland, filed a joint return with her husband, Kenneth K. Milholland. Plaintiff L. C. Gifford during the four years, 1944 to 1947 inclusive, reported the following income tax liabilities on his returns for those years:

| 1944 | $7,817.52 |
|---|---|
| 1945 | 7,901.18 |
| 1946 | 5,585.90 |
| 1947 | 6,920.79 |

and such tax as computed was paid. L. C. Gifford and Mildred J. Gifford filed a joint income tax return for the year 1948 indicating income tax liabilities of $11,937.64, which they paid in due season.

The Commissioner of Internal Revenue failed to adopt the income tax returns for the years involved in that he refused to recognize the interest of Suzanne Gifford and Sara Lee Gifford in the Publishing Company and thereupon determined that profits from the partnership reported by them should be taxable to L. C. Gifford. On the basis of this determination the Commissioner of Internal Revenue on September 8, 1950, assessed income tax deficiency against L. C. Gifford, together with interest, as follows:

| Year | Deficiency | Interest | Total |
|---|---|---|---|
| 1944 | $12,826.83 | $ 4,136.21 | $ 16,963.04 |
| 1945 | 13,247.70 | 3,477.07 | 16,724.77 |
| 1946 | 9,338.52 | 1,890.72 | 11,229.24 |
| 1947 | 11,931.88 | 1,699.88 | 13,631.76 |
| | $47,344.93 | $11,203.88 | $58,548.81 |

and thereupon these assessments as made by the Commissioner were satisfied and fully paid on September 28, 1950, in the grand total of $58,548.81. With the same thought in mind the Commissioner ruled deficient assessments against L. C. Gifford and Mildred J. Gifford for the year 1948 in the amount of $12,422.38, principle and interest, which was paid on September 19, 1950. Whereupon L. C. Gifford on October 13, 1950, filed his claim for refund with the Collector in the amount paid, setting out that such amount of refund as demanded had been illegally and erroneously collected, in that the Commissioner had failed to recognize the interest of Suzanne and Sara Lee in said partnership and correspondingly on said date L. C. Gifford and Mildred J. Gifford for like and similar reasons filed claim with the Commissioner for $12,422.38. The Commissioner of Internal Revenue took no action in said requested refund, and demand made by plaintiffs. Whereupon this action was instituted on November 9, 1951, and admittedly was filed in due time.

Since the Associated Press requires its membership held by an individual this was retained by L. C. Gifford after the formation of the partnership as had been the case since 1929 when the original stock purchase was made and the assets of this struggling newspaper taken over. Membership in the other news

gathering agencies such as the News Enterprize Association was owned and held by the partnership.

A check and complete study of the factors involved in this cause prompts the conclusion that the partnership herein was organized in good faith for a strict business purpose, and as such has been so conducted since its inception, including the years under investigation.

### Conclusions of Law

Since the enactment of the statutes involved, 26 U.S.C.1946 ed. §§ 181 and 182, many decisions have been written in determining the law applicable to the many factual matters presented, and a clear chartering has been laid down by our courts. We learn from the decisions that the ultimate question is "Whether the partnership is real within the meaning of the federal revenue laws."

Judge Dobie in speaking for our Court of Appeals in Funai v. Commissioner of Internal Revenue, 4 Cir., 181 F.2d 890 adopted various excerpts from decisions of the Supreme Court.

"In Commissioner v. Culbertson, 337 U.S. 733, at pages 741 to 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659, the Supreme Court of the United States, referring to its prior decision in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135, said:

" 'We there said that the question whether the family partnership is real for income-tax purposes depends upon "whether the partners really and truly intended to join together for the purpose of carrying on the business and sharing in the profits and losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' Drennen v. London Assurance Corp., 113 U.S. 51, 56, 5 S.Ct. 341, 344, 28 L.Ed. 919; Cox v. Hickman, 8 H.L. Cas. 268. We see no reason why this general rule should not apply in tax cases where the Government challenges the existence of a partnership for tax purposes." 327 U.S. at page 287, 66 S.Ct. at page 536, 90 L.Ed. 670, 164 A.L.R. 1135.

" 'The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.' " Funai v. Commissioner of Internal Revenue, 181 F. 2d 890, 893.

Our Supreme Court further said:

"There is nothing new or particularly difficult about such a test. Triers of fact are constantly called upon to determine the intent with which a person acted. \* \* \* Whether the parties really intended to carry on business as partners is not, we think, any more difficult of determination or the manifestations of such intent any less perceptible than is ordinarily true of inquiries into the subjective." Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 1214.

Thus I conclude that Suzanne Gifford and Sara Lee Gifford were bona fide partners for income tax and all other purposes during the years in question in the partnership of Gifford Publishing Company.

L. C. Gifford, Mildred J. Gifford, Suzanne Gifford and Sara Lee Gifford are each taxable during the years in question upon their share of the distributive earnings of the Gifford Publishing Company in accordance with their partnership agreement.

L. C. Gifford and Mildred J. Gifford are not taxable upon the entire income of the Gifford Publishing Company, but are taxable only upon their individual shares of the partnership earnings as determined under the agreement.

That L. C. Gifford is entitled to refund of income taxes, together with interest paid, in the amount of $58,548.-81, and interest thereon.

That L. C. Gifford and Mildred J. Gifford are entitled to refund of income taxes with interest paid in the amount of $12,422.38, together with interest as provided by law.

Counsel will prepare judgment.